CHARLES O. LIVINGSTON, PLAINTIFF IN ERROR, VS. ROBERTS' EXECUTOR, DEFENDANT IN ERROR.

1. When a party in cross-examining a witness presses questions relating to collateral matters not testified to in the direct examination, he makes the witness his own as to the facts so brought out.

2. Testimony of impressions and conclusions, drawn from a conversation, is of little value against positive testimony giving the language used.

3. Proof of the circumstances under which the plaintiff, the indorsee of a note, purchased it in order to let in evidence of the want of consideration between the original parties, must be such as to necessarily create doubts of the good faith or innocence of the plaintiff in purchasing it.

4. Reputation that the payee of a note is a " conjurer and fortune-teller," and proof that a probable consideration of the note was medicine and nursing furnished to a sick man by the reputed conjurer and fortune-teller, is not evidence that the note was given in consideration of " conjuring," &c., or that the consideration was illegal.

- Writ of Error to the Circuit Court for Duval county.
'. This case was tried before Mr. T. A. McDonell as a Referee.

The other facts of the case are stated in the opinion.

*M. C. Jordan* for Plaintiff in Error.

*C. P. Cooper* in *pro. per.*

THE CHIEF-JUSTICE delivered the opinion of the court.

This was an action upon a promissory note made by John Roberts, December 29, 1876, payable to Mrs. E. G. Magruder or order for two hundred and fifty dollars sixty days after date, and alleged to have been indorsed to the plaintiff before due. The executor of Roberts filed sworn pleas to the declaration: First, That he was not indebted. Second, " That the note was obtained from the said John Roberts in his life-time, not many weeks before his death, while suffering from an incurable disease, by fraud, on false pretenses and without consideration by Mrs. E. G. Magruder, the payee, who claimed to be a conjurer, and proposed to cure said Roberts by witch-craft and conjury, and contracted to cure him or demand no pay, and pronounced him cured after performing her so-called conjuring and incantations and senseless manipulations or some other absurd things, and extracted from him in his weakened state of mind and body said promissory note ; the said E. G. Magruder not being a physician by profession, and not having a diploma or certificate on file or of record, as required by the statute ; and defendant says that said John Roberts was not cured, but died of the disease which she professed to cure in a few weeks after her ' conjuring ' as aforesaid." Third, Defendant alleges that plaintiff is not an innocent holder for value, but had notice of the facts above stated, and bought said note from the payee with full knowledge of said facts, and gave a totally inadequate consideration therefor in consequence of the doubtful and illegal manner of obtaining the note by the payee. The pleas were sworn to. Plaintiff joined issue upon these pleas, and the cause was referred to a referee for trial, who rendered judgment for defendant. Plain-

tiff brings a writ of error. The defendant insists that the consideration of the note having been denied on oath, it was incumbent on the plaintiff to prove the consideration as between the original parties, under the provisions of section 24, act of 1827, Thomp. Dig. 331, to-wit: that " it shall not be necessary for the plaintiff to prove the execution of any bond, note or other instrument of writing purporting to have been signed by the defendant, nor the consideration for which the same was given, unless the same shall be denied by plea " put in on oath.

This provision has been construed in White vs. Camp, 1 Fla., 94, to require the plaintiff to prove the consideration when he is a party to the original note, and the consideration is denied by plea on oath, and not when the plaintiff is the assignee or indorsee. In other words, the rule of the common law as to inquiring into the consideration remains unchanged, except that the defendant may, by plea on oath, compel the payee plaintiff to prove the consideration of a note sued on.

It is held, however, in Prescott vs. Johnson, (8 Fla., 391,) that where it shall be made to appear that the plaintiff purchased the note under suspicious circumstances, such as necessarily to cast a shade upon the transaction and put the holder upon inquiry, the holder must prove the consideration where such plea is put in. Whether the rule in White vs. Camp or that in Prescott vs. Johnson is the sounder one, it is not necessary to decide in this case.

What are the suspicious circumstances under which the plaintiff purchased this note?

The plaintiff testified in his own behalf that the payee called on him to ascertain whether he would take a note of John Roberts' for some goods out of his store. Afterwards she brought the note and delivered it to him in payment of a bill of goods purchased, amounting to $267, something

more than the face of the note.   The defendant then proved
by plaintiff, by way of cross-examination, that at the time
he purchased the note he did not know for what considera-
tion the note was given, but that the payee informed him
that Roberts owed her for doctoring, and owed for other
things some four or five hundred dollars ; that he made no
inquiry as to the consideration or the character of her busi-
ness, but afterwards heard that she was called a doctress, and
told fortunes.   Mr. Ledwith, a witness for defendant, testi-
fied that he heard a conversation between plaintiff and Mr.
Cooper in which he understood that the basis of Mrs. Ma-
gruder's claim was that she had been doctoring or conjuring
Mr. Roberts ; that the words " conjuring " and " fortune-
telling " were used by plaintiff.   He was " strongly of the
belief " also that plaintiff " admitted that he knew before
he traded for the note the peculiar character of the note,
and the circumstances under which the same was given."
Ledwith says there was something said about the inade-
quacy of the amount given by plaintiff for the note, and
that plaintiff said in explanation that he had some doubts
about collecting it, owing to the nature of the claim.

L'Engle, for defence, testified that Mrs. Magruder's pro-
fessed occupation was that of a doctor ; her reputation was
that of a " conjurer, dealing in roots, herbs and spells."   She
said she was treating Mr. Roberts during his sickness.   He
was then of a weak mind.   (This was given under objection
and exception, that failure of or illegal consideration for
the note had not been shown.)

C. P. Cooper, executor of Roberts, testified that Roberts
died February 16, 1877 ; that when plaintiff presented the
note for payment he asked him what the consideration of
the note was, and plaintiff answered that it was given to
Mrs. Magruder by Roberts " for conjuring him to make
him well;" that Mrs. M. was an old woman who lived by

conjuring and fortune-telling; that she professed to be a kind of a doctor, but not a regular doctor. On asking Livingston what he had given for the note, he " laughed and said he did not give much, or something of that sort; had given a little food for her horse or cow and a stove." He said he had given so little for the note because he had doubts about the note and taken chances, or words to that effect. " He admitted to me, then and there, that he knew at the time how Mrs. Magruder had got it." ·

Frederick Luders testified that he was acquainted with Mrs. Magruder; she seemed to be a doctress, made medicines herself and brought them; she attended Mr. Roberts, who sent for her; she attended him several weeks; on a certain morning she did not come, and Roberts sent for her; she sometimes stayed with him two and three hours; I was there often at night, and she would give him medicines, and was sometimes alone with• him, Roberts requesting that everybody else would go out of the room, as Mrs. M. wanted to be by herself with him; never saw her practice " conjuring;" I was with him a good deal, and the last four or five days all the time; I don't think he was a man easily imposed on, or had a weak mind; was with him most of the time, and he talked some sense.

*Cross-Ex.*—Mrs. M. attended Mr. R. about three weeks, calling on an average about every other day, remaining on an average one to three hours; she stopped visiting him three days before he died; during his last illness of eleven months several regular doctors attended him; Mr. Roberts said the doctors never did him any good, and thought she had done him some good.

Plaintiff recalled, said he never made use of the word " conjuring " in Mr. Cooper's presence; did not know the meaning of it; never told Mr. Cooper or Ledwith that the note was given for " conjuring " Mr. Roberts; did not say

to Cooper that the consideration I gave for the note was inadequate, but I gave stoves, feed and goods in my line.

This is substantially all the testimony in the case, and proper judgment depends mainly upon a careful examination of this evidence.

It appears therefrom that the plaintiff gave in exchange for the note goods invoiced at $267, there being no dispute as to the fairness of the invoice offered in evidence, and that the purchase of the note was before it was due. Mr. Cooper's and Mr. Ledwith's recollection of the conversation with Mr. Livingston as to the price paid for the note is too indefinite to overcome this proof.

Mr. Ledwith's testimony as to his impressions, and what he "understood" from the conversation between Cooper and plaintiff, his attention being attracted by the words "conjuring" and "fortune-telling," and his "strong belief" that plaintiff admitted that he knew before he got the note the circumstances under which the note was given, is too indefinite in its treatment of facts to affect the rights of the parties. Indeed the whole testimony of Mr. Ledwith is little more than a statement of impressions.

Mr. Cooper says plaintiff told him the note was given by Roberts to the payee " for conjuring him to make him well ;" that she was an old woman who lived by conjuring and fortune-telling ; a kind of a doctor, but not a regular doctor, and that he gave a small price because he had doubts about the note, and taken chances, " or words to that effect;" and that " he admitted to me then and there that he knew at the time how Mrs. Magruder had got it."

The testimony of Mr. Luders shows that Mr. Roberts sent for Mrs. Magruder to doctor or nurse him, and she was there frequently and for several hours at a time ; made medicines for him and administered them ; when she did not come he sent for her ; never saw her practice " conjur-

ing;" Roberts was a man not easily imposed on, nor of weak mind, and talked sound sense; witness was with him through his sickness, and Roberts thought Mrs. Magruder's treatment had done him more good than that of the several physicians who had attended him.

There is no direct proof here to show what was the actual consideration of the note, but it is shown by testimony produced by defendant in his cross-examination of plaintiff upon matters not referred to in his direct examination, that the plaintiff not only paid a valuable consideration for the note, but took it with no notice or knowledge what the consideration was; and was actually informed by the payee, upon his inquiry before the note was brought to him, that Roberts owed her for doctoring, and other things, several hundred dollars, and that after he took the note he heard she was a doctress or fortune-teller. This testimony so brought out is testimony produced on the part of the defendant. It is a sound rule that a witness cannot be cross-examined to a distinct collateral fact, for the purpose of afterwards contradicting him. He makes the witness his own. 5 Wend., 301; 2 Dev. & Bat., 39; 2 Caines, 178. The testimony of Mr. Ledwith and Mr. Cooper was in some respects an apparent contradiction of a part of the testimony of the plaintiff as a witness examined by defendant, and by which the defendant is bound, if the strict rules of law are applied. Mr. Cooper's testimony is the only evidence substantially contradicting that of the plaintiff, and that is in respect to what plaintiff had said to him as to the consideration of the note and his knowledge of it when he bought it.

Mr. Cooper says plaintiff told him what the note was given for, and that he knew it at the time. Plaintiff says he did not tell him so, and he didn't know when he bought

it what it was given for, but had heard afterwards that the payee was a " doctress or a fortune-teller."

Taking this testimony all together, there is no proper proof of such suspicious circumstances in respect to the purchase of the note, or of notice to the plaintiff of any defect in the consideration, as to require him to prove the actual consideration for which the note was given, according to the strictest reading of the opinion of the court in Prescott vs. Johnson. But the testimony of Luders fortifies the plaintiff's testimony as to Roberts' indebtness to Mrs. Magruder. There is no testimony tending to show anything about " conjuring " or other " humbug treatment " of Roberts by Mrs. Magruder. She prepared and gave him medicine, and spent much time in doctoring and nursing him. What " other things " entered into the consideration of the note we cannot learn from this testimony.

When there have been business transactions between parties, and a note is given by one to the other, a consideration for the giving of the note may naturally be referable to such previous or current business affairs of the parties, and so if necesssry the testimony here. as to services rendered by the payee at the request of the maker may be applied to show an indebtedness in support of the consideration of the note in question, and the words " value received " expressed in it.

We do not find any evidence of the fraud, witchcraft, conjury or false pretenses, alleged or alluded to in the pleas. These are allegations to be proved, if available, as defences or in support of the plea of want of consideration. There is no sound rule of law which requires this plaintiff to negative such allegations of grounds of defence.

The judgment must be reversed and a new trial granted.