LOUIS H. ELDRIDGE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A plea in abatement setting up the pendency of another indictment in the same court against the defendant for the same offense charged in the indictment upon which he is put upon trial, is bad, and constitutes no ground for abating the prosecution.

2. In a prosecution of an editor of a newspaper for libel, and a publication in the same paper subsequent to the finding of the indictment is offered in evidence on the question of malice, some connection must be shown between the publication complained of and the publication offered in evidence, and if the subsequent publication tends to show ill will towards the person concerning whom the publication complained of is made, and is of such a nature as to indicate a persistent disposition of hatred or ill will towards him, or if it indicates a part of a settled purpose to bring him into public hatred, contempt or ridicule, and is sufficiently near in time to afford a natural inference that the same state of mind existed when the publication complained of was made, it is admissible.

3. A witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony.

Louis H. Eldridge v. The State of Florida.—Syllabus.

4. The motives, interest or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and as to such matters he may be contradicted.

5. It is competent to show as a fact feelings of hostility on the part of a witness, or the state of a witness' mind, in respect to the person against whom he testifies, and the jury may consider this hostility or bias in estimating his testimony; but an inquiry into the conduct and acts of parties producing hostility not relating to the matters in issue should not be permitted.

6. The use of opium cannot be introduced to impair the credit of a witness unless it be shown that the witness was under the influence of it when examined, or when the litigated event occurred, or that his mind was impaired generally by the use of it.

7. The language of a charge "that the jury cannot infer that the libel was published with good motives; that good motives must be proved the same as any other fact, and if the defendant has failed by competent evidence to prove that the libel was published with good motives, they must reject all evidence going to prove the truth of the libel and convict the defendant," is calculated to mislead the jury into the belief that they are never authorized to infer good motives from the facts and circumstances given in evidence in a case.

Writ of Error to the Circut Court for Volusia county.

The facts of the case are stated in the opinion.

*B. M. Miller* for Plaintiff in Error.

*The Attorney-General, J. D. Beggs, State Attorney,* and *Alex St. Clair Abrams* for Defendant in Error.

MABRY, J.:

At the Spring term, 1889, of the Circuit Court for Volusia county, Lewis H. Eldridge, plaintiff in error, was indicted for publishing a libel of and concerning Della V. Smith, wife of one B. B. Smith, and a resident of Volusia county. The libel is alleged to have been published in the form of a newspaper article in an issue of the DeLand Weekly News, on April 20th, 1889, and as set out in the indictment is as follows: "Circuit Court. Making the fur fly from the backs of the wicked. No true bill against B. B. Smith. The Smith-Douglass Case. State vs. B. B. Smith; assault with intent to murder. No true bill. This is the famous Smith-Douglass case, of Daytona. Smith is a dentist, who has resided in that town for some time. On account of the incompatibility of temper, himself and wife had not been living together for some months. Lately, Smith had had reason to suspect that his wife and J. W. Douglass, Captain of the Halifax Rifles, U. S. Surveyor, ex-deputy sheriff, town assessor of Daytona, and right bower of Bill Jackson, were becoming too affectionate. On the night of February 13, 1889, Smith, accompanied by his father, went to the residence of his wife, and there caught that lady and Douglass in a very embarrassing situation. Smith and

Douglass had a scuffle, in which the former's pistol went off, the ball hitting Douglass in the arm. When the case came up before the jury, that body very properly refused to find a true bill against Smith, whereupon Douglass went before Justice Dore and had a warrant sworn out against Smith. Smith was arrested, but gave bond and is now at liberty. This case has caused a good deal of interest all over the county. Smith says that when he was tried before Justice Packett, in Daytona, that Bill Jackson went to that officer and tried to bull-doze him into putting his (Smith's) bail up to $1,000. Smith has the most positive proof of his wife's guilt; and when one looks at the hang-dog countenance of Douglass, and considers his unsavory reputation, he cannot help but think that the lady had very poor taste. Jackson's conduct in this affair, aiding and abetting a man who has added adultery to his other numerous failings, is a fitting chapter to the balance of his career."

On the indictment is endorsed the following: "Now comes the defendant, Louis H. Eldridge, and acknowledges identity, waives arraignment, and pleads in abatement in open court. May 2d, 1889. Lewis H. Eldridge." On the same day defendant below filed the following plea in abatement: "Now comes the defendant, Lewis H. Eldridge, in his own proper person, and having heard said indictment read, for plea to said indictment saith that this court ought not to take

cognizance of this indictment, for he says that there is
another indictment pending against this defendant in
this court for the same offence alleged and set forth in
this indictment, and this the defendant is ready to ver-
ify ; whereupon he prays judgment that said indict-
ment be dismissed, and that he be discharged." A de-
murrer was interposed to this plea by the State on the
grounds, "that the fact that there are two indictments
pending against the defendant charging the same
offence is not sufficient ground for abating either ; that
the plea does not set up that the libel charged in each
indictment as against the same person ; that the plea is
bad in law." This demurrer was sustained by the
court, and defendant excepted.

The defendant was at the fall term, 1889, of said
court tried upon said indictment and a verdict of guilty
returned against him. A motion was made by defend-
ant below to set aside this verdict for reasons therein
stated, which motion was overruled by the court and
defendant sentenced to pay a fine of $400 and costs.

During said term and in open court defendant below
entered an appeal from said judgment and sentence to
this court, and herein assigns the following errors :
First, the Circuit Court erred in admitting in evidence
the issue of the "DeLand Weekly News" of April
27th, 1889 ; second, the Circuit Court erred in admit-
ting testimony upon the cross-examination of the de-
fendant's witness, Belon B. Smith, as to conversations

had by said witness with Dr. G. M. Wallace concerning the marital relations of said witness with his wife, Della V. Smith; third, the Circuit Court erred in admitting testimony upon the cross-examination of said witness B. B. Smith as to the divorce proceedings between himself and his former wife, Della V. Smith, and as to the marital relations between said parties previous to the bringing of such divorce proceedings, and as to the conduct and actions of said witness prior to and subsequent to such divorce proceedings; fourth, the Circuit Court erred in refusing to strike out such testimony upon the motion and request of the defendant; fifth, the Circuit Court erred in admitting the testimony of the witness on the part of the State, Della V. Smith, in relation to the divorce proceedings between herself and Belon B. Smith, and in relation to the marital conduct of said Belon B. Smith; sixth, the Circuit Court erred in refusing to strike out such testimony upon the motion and request of the defendant; seventh, the Circuit Court erred in admitting in evidence the letter marked exhibit "C," and the testimony of the witness, Della V. Smith, in relation thereto; eighth, the Circuit Court erred in admitting in evidence the letter marked exhibit "D," and the testimony of the witness, Della V. Smith, in reference thereto; ninth, the Circuit Court erred in admitting in evidence the letter marked exhibit "E," and the testimony of the witness, Della V. Smith, in reference thereto; tenth, the

Circuit Court erred in admitting the testimony of the State's witness; Dr. G. M. Wallace, in reference to conversations between himself and the witness Belon B. Smith ; eleventh, the Circuit Court erred in refusing to allow the defendant to introduce evidence to impeach the general moral character, and the character for truth and veracity of the State's witness, Della V. Smith, and to show that said Della V. Smith testified falsely ; twelfth, the Circuit Court erred in giving in charge to the jury the instructions requested by the State numbered 2, 3, 6, 7, 8, 9, 10 and 11; thirteenth, the Circuit Court erred in refusing to give in charge to the jury the instructions requested by the defendant; fourteenth, the Circuit Court erred in giving in charge to the jury instructions numbered 2, 3, 4, 5, 6, 7, 8 and 9, prepared by the court; fifteenth, the Circuit Court erred in denying defendant's motion to set aside the verdict and for a new trial ; sixteenth, the verdict was contrary to the law and the evidence.''

There is in the record here duly signed bill of exceptions by which we are advised of the evidence introduced on the trial, the charges given and refused by the court, as well as the various exceptions taken to the rulings of the court during the trial of said cause.

There was no error in the ruling of the court sustaining the demurrer to the plea in abatement of defendant below.   The fact that there was pending at the time another indictment in said court against defendant for

the same offence charged in the indictment upon which he was put upon trial is no reason for abating this prosecution. 1 Archbold's Criminal Practice and Pleading, p. 336 (m. p. 111); 1 Chitty's Criminal Law, 447; Commonwealth vs. Drew, 3 Cushing, 279; Dutton vs. State, 5 Ind., 533.

On the trial it was admitted that the defendant, Louis H. Eldridge, was the party accused, the publisher of the DeLand Weekly News, and that it circulates in Volusia county, Florida. The State then offered in evidence the issue of said paper of April 20th, 1889, containing the article on which the indictment was found, and which was read to the jury. The State then offered in evidence the issue of said paper of April 27th, 1889, containing the following article: "Indicted for Libel. The future of the News as a newspaper is now assured. Its editor and proprietor has been indicted for libel and arrested. Ever since the News started, it has been a sharp thorn in the side of Bill Jackson and his gang. It has shown them up in their true colors, and exposed their nefarious practices to the people, and it was and is the standard-bearer of the party that met and routed them at the polls last November. It is the only paper that has dared to tell the truth about them, and it is rewarded by their fear and hatred and the esteem and applause of honest people of Volusia county, without regard to party. Last week in our account of the court pro-

ceedings, we gave a brief history of the Smith-Doug-
lass case. Taking this as a basis, Mrs. Smith and
Douglass went before the grand jury, and after three
days of hard work induced that body to bring two
bills for libel against the editor of the News. In this
Douglass was backed by Bill Jackson. Bill does not
love Douglass—far from it—for Douglass is too low
down for even Jack to like him, and he would soon be
cast loose upon the world did he not know so many of
Jack's secrets. But Bill hopes that by this means he
may silence the newspaper that has dared to stand up
and tell the truth about him. It is well. The News
can prove all it has said, and more. Douglass will re-
ceive a showing up that will prevent any decent man
from holding intercourse with him. As for the
woman, well, she is a woman, and beyond proving to
be true what we have already said, she may go. The
News has made a specialty of telling the truth. It has
told the truth regardless of consequences. It has told
the truth when it could have made money by remain-
ing silent. It has told the truth when the air has been
full of cuss words, razors and shotguns, and when the
song of the rib kicker was heard in the land. It will
tell the truth some more—libel suit or no libel suit—
and rascals may as well get used to it.'' To the in-
troduction of this article in evidence defendant ob-
jected on the ground that it was printed after the find-
ing of the indictment, and because the same is not li-
belous and does not refer to the same subject matter
as the article set forth in the indictment; and because

the same is irrelevant and immaterial. This objection was overruled and the said article was read to the jury. Permitting this article to be read to the jury is the first error assigned. The authorities referred to by counsel for defendant do not, in our opinion, sustain the objection here made. This is a criminal prosecution for maliciously publishing a libel. The rule announced in the case of Commonwealth vs. Damon, 136 Mass., 441, we think is correct. The conclusion of the court in that case on this point is stated in the following language: "We think that, in criminal prosecutions for libel, the reasonable doctrine is, that some connection must be shown between the publication complained of, and the publications admitted in evidence to prove actual malice; but if these tend to show ill will towards the person concerning whom the publtcation complained of is made, and are of such a nature as to indicate a persistent disposition of hatred or ill will toward him, or if they appear to be a part of a settled purpose to bring him into public hatred, contempt or ridicule, and are sufficiencly near in time to afford a natural inference that the same state of mind existed when the publication complained of was made, they are admissible, although they are subsequent to the publication complained of, and do not expressly refer to it." The article here objected to was published seven days after the publication of the alleged libelous article and the former refers in direct terms to the same subject-matter and persons mentioned in the latter. We think these publications are so related to

each other in time and subject-matter as to make it proper to admit the second in evidence on the question of malice, and the court committed no error in this respect. Wharton's Criminal Evidence, sec. 52; 3 Greenleaf on Evidence, sec. 168; Williams vs. Miner, 18 Conn., 464; State vs. Riggs, 39 Conn., 498; Kennedy vs. Gifford, 19 Wend., 296; Robbins vs. Fletcher, 101 Mass., 115; Commonwealth vs. Damon, 136 Mass., 441.

The second assignment of error is, that the court erred in admitting testimony upon the cross-examination of the defendant's witness, Belon B. Smith, as to conversations had by said witness with Dr. G. M. Wallace concerning the marital relations of said witness with his wife, Della V. Smith. On cross-examination the witness, B. B. Smith, was asked the following questions which were objected to by defendant: "Did you or not at Daytona shortly prior to your leaving your wife in 1887 have a conversation with Dr. Wallace at Daytona in which you told him that you intended abandoning your wife, and on his asking you the reason why, say to him that you were going t leave her because she was a "cracker;" that she was not educated and refined enough for you, or words to that effect?" "Did you or not on the same day, at the same time, in the same place, in the same conversation with Dr. Wallace, say to him in answer to a question whether or not you had any other fault to find with your wife, say to Dr. Wallace that you had not, and she was as virtues a woman as ever lived, and that

if she was educated, polished and refined you would never leave her, or words to that effect?" The witness answered that he had no recollection of such conversations with Dr. Wallace. The objections to the questions here permitted is based upon the theory that it is an inquiry into collateral matter not connected with the issue. It is well settled that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. 1 Greenleaf on Evidence, sec. 449; Livingston vs. Roberts' Executor, 18 Fla., 70. The motives, interest or animus of a witness, however, are not collateral matters and these may be shown and considered by the jury in estimating the credibility of a witness. Selph vs. State, 22 Fla., 537; Nation vs. People, 6 Parker's Crim. Rep., 258. Not only can a witness be questioned on cross-examination as to matters showing his motives, interest or animus, but he can be contradicted as to such matters. 1 Greenleaf on Evidence, sec. 450; Long vs. Lamkin, 9 Cushing, 361; Commonwealth vs. Byron, 14 Gray, 31; Titus vs. Ash, 4 Foster (N. H.), 319; Martin vs. Farnham, 5 Foster (N. H.), 195; Drew vs. Wood, 6 Foster (N. H.), 363; Atwood vs. Welton, 7 Conn., 66; Newton vs. Harris, 6 N. Y., 345. If the testimony sought to be elicited by the questions can be admitted at all it must be upon the ground of showing the bias or animus of the witness towards his wife. It is an inquiry into matters not touched upon

by the witness on direct examination, and not pertinent to the issue here, unless for the purpose of showing the state of mind of the witness in reference to his wife. The alleged libel consisted in publishing that Mrs. Della V. Smith was guilty of adultery. The plaintiff in error published the article in reference to Mrs. Smith upon the information of the husband, B. B. Smith, and he was introduced as a witness on the trial to prove the truth of the publication. He testified, among other things on direct examination, that he went to his house in Daytona on the night of February 13th, 1889, and while on watch there discovered his wife in the act of adultery, and that at that time he was living separate from her and divorce proceedings were pending between them. At the time Smith testified a divorce had been granted. In order to exhibit the feeling entertained by Smith for his wife, we think it competent to show that a short time before leaving her he stated his purpose to abandon her. The questions propounded tended to develop this fact, and for the purpose of showing the animus of the witness towards his wife, against whom he had testified, we think it was competent to ask the questions.

In rebuttal counsel for the State examined Dr. Wallace in reference to the conversations about which the witness, Belon B. Smith, had been questioned. This tertimony was objected to, and the ruling of the court allowing it is the tenth error assigned. From what has already been said in reference to the questions propounded to the witness B. B. Smith it follows

that it would be competent to contradict him as to these matters. If the testimony of Dr. Wallace can be considered as a contradiction of the witness Smith as to his statement that he intended to leave his wife, no error could be based upon admitting it. An examination of the record reveals the fact that Wallace does not contradict Smith in this respect. Wallace says, in speaking of the conversation with Smith, "as near as I can recollect, he stated that if his wife only had polish and was refined, that if she understood some music, and was not a cracker, but was like other ladies he mentioned, that it would push him in his business and he would get along better. After talking with him awhile I said : 'have you any reason to doubt her virtue,' and he said she was as virtuous as any woman in Florida. I had no idea there would be a separation at that time." On cross-examination this witness further stated that Smith said nothing about his intention of leaving his wife. This testimony of Wallace fails to contradict the testimony of Smith in reference to the statement about leaving his wife, and should have been excluded. As to the matters about which Wallace does testify, they are collateral and irrelevant to the issue here and should not have been allowed to go to the jury.

The third, fourth, fifth and sixth assignments of error will be considered together. The third is that "the Circuit Court erred in admitting testimony, upon cross-examination of said witness, B. B. Smith, as to

the divorce proceedings between himself and his former wife, Della V. Smith, and as the marital relations between said parties previous to the bringing of such divorce proceedings, and as to the conduct and actions of such witness prior and subsequent to such divorce proceedings." The fourth assignment of error is, that "the Circuit Court erred in refusing to strike out such testimony upon the motion and request of the defendant." The fifth is that "the Circuit Court erred in admitting the testimony of the witness on the part of the State, Della V. Smith, in relation to the divorce proceedings between herself and Belon B. Smith, and in relation to the marital conduct of said B. B. Smith." And the sixth is, "the Circuit Court erred in refusing to strike out such testimony upon the motion and request of the defendant." Under the third assignment of error is presented the objection of defendant below to the testimony of B. B. Smith on cross examination in reference to the divorce suits. On direct examination this witness stated that at the time he discovered his wife in the act of adultery, he had separated from her and divorce proceedings were pending between them. On cross-examination he was asked "who brought this suit for divorce that was pending at that time?" He answered "that there was a suit pending by both parties; I began the first suit." This testimony was objected to below and the ruling of the court admitting it is assigned as error here. This objection is not well taken. It is clearly a cross-examination upon what the witness had already stated in

direct examination. The other objections raised under this assignment of error to the testimony relating to the conduct and actions of the witnes, B. B. Smith, and the marital relations between him and his wife prior to the divorce proceedings are well taken, in our opinion, and the court erred in permitting such testimony and evidence to rebut it. The record shows that counsel for the State were permitted on cross-examination to examine the defendant's witness, B. B. Smith, not only as to the pendency of a divorce suit between him and his wife, but also as to the grounds upon which said suit was based and who was responsible for them. This witness stated on cross-examination that he first instituted a suit for a divorce against his wife upon the ground of ungovernable temper, and incompatibility of temper. The following question was propounded to this witness by counsel for the State: "Now, Mr. Smith, you testified that you left your wife, and you have testified that you began these divorce proceedings because of incompatibility of temper, and ungovernable temper; please state in what that ungovernable or incompatibility of temper consisted?" Answer—"It consisted in swearing; on one occasion she called my mother a bitch; she called me a damn liar and slapped me in the mouth, and a number of other times she did equally as bad." Question—"She was very quarrelsome?" Answer—"Indeed she was." Question—"She was very angry when she quarreled with you?" Answer—"She was that

12

angry that she had no control of herself; she would say anything that would come into her mind." Question—"Were you or not in any way responsible for these outbursts of anger on her part?" Answer—"I am not conscious that I am." Question—"State whether or not one of these outbursts of ungovernable temper on the part of your wife and her use of violent language and the violence of her manner was or was not caused by your having a young woman in your house purporting to be a relative of yours, and hugging and kissing that woman in the presence of your wife, and keeping her and yourself in your dental office until two or three o'clock in the morning?" The witness answered no. The cross-examination of this witness went much further, but we deem it unnecessary to set out more of it here. He was asked in reference to quarrels and outbursts of anger on the part of his wife caused by his conduct with different women, and also in reference to letters alleged to have been written by the witness to women in Volusia county, Florida. He was asked as to how he provided for his wife while he lived with her, and whether or not she was forced to work for the necessaries of life. The wife was introduced in rebuttal by the State, and the court permitted her to contradict her husband in reference to all these matters brought out on cross-examination. They had no connection with the issue before the jury, and were calculated to divert the minds of the jurors from the questions which they were empanelled to try. This is a prosecution against defendant, Eldridge,

for publishing a libel concerning Mrs. Della V. Smith, and not an investigation into the merits of a divorce suit between her and her husband, B. B. Smith. The rules of evidence permit, in the discretion of the trial judge, a great latitude on cross-examination, when in his judgment such a course is essential to the discovery of truth; but they do not permit an inquiry into collateral matters in no way connected with the issue, for the purpose of contradicting a witness. A party has no right on cross-examination to interrogate a witness as to a distinct collateral fact for the purpose of contradicting him, and if such an examination is permitted by the judge under the latitude allowed on cross-examination, as to such matter, the party examining makes the witness his own. Livingston vs. Roberts' Executor, 18 Fla., 70. The position taken on the part of the State is, that the extent of the examination allowed here was permissible to show the motive or feeling of B. B. Smith in reference to his wife. As stated above, the feeling or state of a witness' mind in respect to a person against whom he testifies may be shown to the jury and should be considered by them in weighing his testimony. This is a familiar rule, and of constant application, but it does not justify the extent of the examination allowed in the case before us. It is competent to show as a fact that a witness is hostile to the party against whom he testifies, and the jury can consider this hostility in estimating his testimony, but an enquiry into the conduct and acts of parties producing the hostility raises

another and collateral issue which should not be permitted to be gone into by the trial judge, otherwise there would be no limit to the investigation of any cause. In the case of Selph vs. State, *supra*, a witness after being examined by the State, testified on cross-examination that he took part in indignation meetings against the Selphs in Lake City and resolutions were passed in the meetings. He was asked by the State, "what was the reason and purpose of the public meetings you attended, and what was your reason and purpose in attending those meetings? In answer the witness said, "my reason for attending that meeting was, that I was invited there by leading citizens of the county and town for the purpose, as explained to me, of forming some resolutions as to what steps shall be taken to do away with the riotous proceedings of the Selphs on the day before the killing. The reason, as I understood, was about the conduct of the Selphs." The witness was then asked what was the conduct, and he gave an account as related to him of the conduct of the Selphs in shooting at men in town, and endangering the lives of the people by their violent acts, and stated that he thought it was time to put a stop to it, and this was the reason he attended the meeting. In speaking of this testimony this court said: "The evidence could have been elicited by the defense for but one purpose, and that was legitimate to show the state of feeling of the witness towards the prisoner. If witness was hostile to prisoner it was proper that it should be considered by the jury in

weighing his evidence. The witness' state of mind and interest in respect to the prisoner are always pertinent inquiries, for they go to his credit. * * The reasons for holding the indignation meeting, or the reasons of witness for attending it, could not be inquired into. Its only relevancy consisted in the fact that it was hostile to the prisoner, and that the witness took part in it. He had a right to draw out those facts, and then the inquiry should have stopped. Suppose a witness, with a view of ascertaining his feelings towards a prisoner, is asked if he has not had a controversy with the prisoner. If he answers in the affirmative, would that be a sufficient reason for the other side to ask him the cause of the controversy, and for the court to permit him to go on and give a long account of other matters in no way connected with the crime for which the prisoner was on trial, and detail broils and shooting scrapes that the prisoner had been engaged in, in which the lives of women and children were endangered? It is permissible to prove that witness and prisoner had a controversy, from which hostility was engendered. It is of no consequence which was in the right in such controversy. It is of consequence that it caused hostility to the prisoner." In the case before us it was proper to show as bearing upon the credibility of Smith that at the time of the alleged adultery testified to by him the marital relation between himself and wife had been broken up and they were suing each other for a divorce. It was not competent to go beyond this and

182 · SUPREME COURT.

Louis H. Eldridge v. The State of Florida.—Opinion of Court.

inquire into the causes of quarrels and angry fusses between them.

The seventh, eighth and ninth assignments of error are based upon the admission in evidence of certain letters marked exhibits "C," "D" and "E." The witness, B. B. Smith, was asked by the counsel for the State, on cross-examination, whether or not outbursts of ungovernable temper on the part of his wife were caused by her finding in his coat pocket a letter written by him and addressed to a young woman in Volusia county, in which he made ardent declarations of love to the young lady and spoke in an offensive manner of his wife. He stated that he had no recollection of any such letter. Questions containing portions of letters were propounded to this witness, and he was asked if he did not write letters containing such statements. An extended cross-examination was permitted as to the letters, and in rebuttal Mrs. Smith contradicted her husband as to them. She says that two of the letters introduced in evidence were written by her husband and one being addressed to him she found among his papers. These letters do not refer in any way to the alleged libelous publication by defendant. They were written long before the publication was made and before any divorce proceedings were instituted between Smith and his wife. The only relevancy which they could have would be to show Smith's feelings for his wife and the quarrels between them caused by the letters. The defendant, Eldridge, is in no way connected with the letters, and their contents

are not evidence against him. The fact that hostility
and bad feelings may have been engendered between
Smith and his wife on account of letters written by
him may be shown, but it would be going beyond the
rule to allow the letters in no way referring to the
matter under investigation to be introduced for the
purpose of showing the cause of such feelings and
hostility.

The record reveals an error on the part of the court
in admitting testimony in reference to the use of mor-
phine by Jubilee Smith. Jubilee Smith was intro-
duced by defendant to prove the truth of the publica-
tion concerning Mrs. Della V. Smith. On cross-ex-
amination he was interrogated as to his use of mor-
phine. He was asked, "are you not a morphine
eater?" Answer—"No sir." "Do you not habit-
ually use it?" Answer—"I sometimes take it for ner-
vous headache." "Do you not habitually use mor-
phine?" Answer—"Only when I have the headache."
"Are you not using morphine daily?" Answer—"I
am not." "Did you not while at Daytona use large
quantities?" Answer—"I did not." He further sta-
ted that he was not at all out of the way with the
use of any drug, and his senses not in the least im-
paired. That for eight weeks while at Daytona he had
but little memory about it, but this time was subse-
quent to the events about which he testified. In re-
buttal Della V. Smith testified that she was acquainted
with Jubilee Smith, and that he lived in her house one
month. She was asked "do you know what the hab-

its of Jubilee Smith are in regard to ths use of morphine?'' Her answer was, ''he used morphine to excess; he would put it in his arms and limbs.'' ''Have you seen him do it?'' Answer—''I have, but I would not see him as often as he would do it.'' '' How often have you seen him do it?'' Answer—''Two or three times.'' ''Could you tell when he was under the influence of morphine?'' Answer—''He was always, almost incessantly.'' ''Can you tell when any one was under the influence of morphine?'' Answer—''I can. I noticed him when I had seen him giving these injections of morphine. He was in my house for one month under my observation.'' In rebuttal William Jackson stated that he was slightly acquainted with Jubilee Smith. He was asked if he knew anything of Smith's habit of indulging in the use of morphine, and in reply stated, nothing of his own knowledge further than that he had assisted in paying bills for morphine and liquor for him. This testimony in rebuttal was objected to by defendant, and the court permitted it to go to the jury. Dr. Wallace in rebuttal stated that he had frequently seen Jubilee Smith, but was very slightly acquainted with him; that he had something peculiar about him that witness could not attribute to anything else than the influence of morphine. Dr. Mayer consulted witness about Smith's excessive use of morphine, but witness was never taken to his bedside. He was acquainted with the effects of excessive use of morphine in the mental faculties, but had made no special study of it. The witness stated that the ef-

fect of morphine taken in excess is to make a man visionary and produces a dreamy condition. The excessive use of morphine always blunts the mental faculty of the person afflicted with its use. In sec. 418, 1 Wharton's Law of Evidence, it is said "the use of opium cannot be introduced to impair credit, unless it be shown that the witness was under the influence of opium when examined or when the litigated event occurred." In the case of McDowell vs. Preston, 26 Ga., 538, it was held that in order to discredit or weaken the testimony of a witness, it is not enough to show that the witness was in the habit of using opiates. The proof must go further and establish either that the mind of the witness was impaired generally by the use of it, or at least under the influence of the opiate at the time the testimony was taken. The testimony here offered by the State falls short of this test and should have been excluded. There was no testimony to show that the witness, Smith, was under the influence of morphine either at the trial or at the time of the event about which he testified, nor is it shown that his mind was impaired generally by the use of morphine.

For the errors here pointed out the judgment entered in this case against defendant in the court below must be set aside, and a new trial awarded.

There are other assignments of error in the record, but we do not deem it necessary to go into a discussion of them. Most of the errors assigned by plaintiff in error, and which we do not pass upon, relate to the

charges given for the State, and those asked on behalf of the defendant below and refused. In view of the earnest contention of plaintiff in error in this court in reference to the refusal of the trial judge to give the third charge asked for defendant below, we will consider it. The third charge asked for defendant and refused by the court is as follows: "A defendant in a criminal case is supposed to be innocent until he is proven guilty; and before he can be convicted the jury must be satisfied of his guilt beyond a reasonable doubt. If the jury entertain a reasonable doubt as to the truth of the article published or the motive of the defendant in publishing it; they will give the defendant the benefit of the doubt and acquit him." The court refused to give this charge asked by the defendant, but charged the jury that "the presumption of law is in favor of innocence, and the defendant is entitled to the benefit of every reasonable doubt as to his guilt." Counsel for plaintiff in error contends that "the court in denying the third charge of defendant refused to charge that if the jury entertain a reasonable doubt as to the truth of the charge, and the defendant's motive in publishing it, they should acquit." In a criminal prosecution for libel under the constitution of 1885, two things must appear in order to constitute a defence for publishing libelous matter. It must appear that the libelous matter is true, and that it was published for good motives. Constitution of 1885, sec. 13, Declaration of Rights. If the contention of plaintiff in error is that a defendant in a prose-

cution for libel is entitled to the benefit of a reasonable doubt arising from the evidence as to the truthfulness of the libelous matter and the good motives in publishing it as he is entitled to a reasonable doubt as to the commission of other offences, it is evident that the charge asked does not present this question. The charge states the law to be that if the jury entertain a reasonable doubt as to the truth of the article published, *or* the motive of the defendant in publishing it, they must acquit. The charge asked for is in the disjunctive and does not present for decision the question contended for by plaintiff in error.

The sixth charge given on behalf of the State we think requires some notice. Its language is, "that the jury cannot infer that the libel was published with good motives; that good motives must be proved the same as any other fact, and if the defendant has failed by competent evidence to prove that the libel was published with good motives, they must reject all evidence going to prove the truth of the libel, and convict the defendant." The language here used is calculated to mislead the jury into the belief that they are never authorized to infer good motives from the facts and circumstances given in evidence in a case. The charge says "the jury cannot infer that the libel was published with good motives; that good motives must be proved the same as any other facts." While they are told that good motives must be proved as any other fact, they are also told that they cannot infer good motives. Good motives may appear as an infer-

ence from the facts and circumstances of the case given in evidence, and the language of this charge is calculated to mislead the jury in their finding in this respect.

Plaintiff in error assigns as error the decision of the Circuit Judge in overruling a motion to set aside the verdict against defendant below, and for a new trial. One of the grounds of the motion for a new trial is, that the court erred in allowing an attorney employed by private parties, and not by the State, to appear as counsel in the cause and assist the State attorney in the prosecution of defendant. No objection was taken during the progress of the trial to the part taken by the counsel employed by private parties, and the question now presented was not raised until after verdict. This objection comes too late for the plaintiff in error to avail himself of it here. There is a conflict of authority as to the right of counsel employed by private persons to appear and aid in the prosecution of persons charged with grave crimes. In the States of Texas, Kansas, Maine and probably others, the right of counsel employed by private persons to aid in such prosecutions is sustained. Burkhardt vs. State, 18 Texas Ct. App., 599 ; State vs. Wilson, 24 Kansas, 189 ; State vs. Bartlett, 55 Maine, 200. In the Texas decision it is said that a long and uniform practice in the State sanctions such practice. A contrary rule had been established in the States of Massachusetts, Michigan and Wisconsin. Commonwealth vs. Williams, 2 Cushing, 582 ; Commonwealth vs. Gibbs, 4

Gray, 146; Meister vs. People, 31 Mich., 99; People vs. Hurst, 41 Mich., 328; Biemal vs. State, 71 Wis., 444. The question not having been presented in time, we express no opinion on it.

For the errors hereinbefore pointed out the judgment of the Circuit Court is reversed, and a trial *de novo* is awarded.