# DECISIONS

OF THE

# Supreme Court of Florida.

## JUNE TERM, 1907.

EMMA ADAMS, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1.  A proper predicate for the impeachment of a witness is necessary, and where an important state's witness was asked a question on cross examination which properly laid the foundation for impeachment, it is erroneous not to permit the defendant to impeach such witness by showing he had. made a contradictory statement.

2.  The general rule is that the answer on the cross examination of a witness respecting any fact irrelevant to the issue is conclusive and cannot be made the basis of impeachment.

3.  It is improper for a prosecuting officer to state to the jury his personal opinion as to the guilt of a defendant irrespective of the evidence in the case, but it is competent for him to argue the defendant's guilt from the evidence, to show that the evidence produces conviction on him, and should convince them.

This case was decided by Division B.

Writ of Error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the court.

*Price and Watson* and *S. K. Gillis,* for plaintiff in error.

*W. H. Ellis,* Attorney General, for the state.

HOCKER, J.—Emma Adams, the plaintiff in error, was indicted at the Spring term, 1907, of the Circuit Court of Walton county, for the murder of one Luvenia Glenn, on the 18th of August, 1906. She was tried and convicted of murder in the first degree, with a recommendation to mercy, and sentenced to the state prison for life. She seeks to reverse the judgment, on writ of error.

The first assignment of error is predicated upon the refusal of the trial judge to permit the defendant to propound to Cora Boswick, a witness for defendant, the following question: "State whether or not in that conversation the witness, Bias Bryant, made any statement to you as to where he was when the shooting took place."

Bias Bryant was a very important witness for the state, who had testified that he was present when Emma Adams shot Luvenia Glenn. The brief of the plaintiff in error does not indicate where a predicate may be found in the record for the impeachment of Bias Bryant, by this witness, and we have not been able to find any. Such a predicate is necessary.

The second assignment is based on the refusal of the court to permit the defendant to propound the following question to R. M. Kelley, one of her witnesses, *viz*: "State whether or not in that Schuman conversation, the witness Bias Bryant told you where he was when the shooting occurred." The record shows that Bias Bryant stated in chief that he was present when the shooting took place in which Luvenia was killed by about an alleged conversation with Mr. Kelley. The the defendant. He was asked on cross-examination

record shows the following: "I never did tell him anything like that at Shuman's just before or immediately after the examining trial before the justice of the peace that when the shooting took place I was down at my house. I never told him anything like that. I did not talk to him at Shuman's. I said I talked to him at Shuman's place, not at his house. I did not tell Mr. Kelley that when this shooting took place I was at my house, and not down there." The record also shows that when Mr. Kelley was being examined in chief as the defendant's witness the following question was put to him: "State whether or not in the Shuman conversation Ruis (Bias) told you where he was when the shooting took place,"—the defendant's attorney stating that he expected to prove by this witness that Ruis (Bias) told the witness that he was at his house when the shooting took place, and was not present. This question was objected to by the state attorney and objection was sustained, and the defendant excepted to the ruling.

Bias Bryant, who is sometimes mentioned in the record as Ruis, was, as before stated, the only state's witness who claimed to be present when the shooting occurred, and his testimony was very damaging to the defendant. He had testified that just before the shooting he was at his house which was from fifty to seventy-five yards from Luvenia's house, in which the latter was shot and killed according to his testimony by the defendant. It was, therefore, very material for the defendant to show by Kelley, if she could do so, that Bias had stated to him that he was at his own house, and not at Luvenia's when the shooting took place. If he made such a statement to Mr. Kelley, and the latter had so testified, it would have tended to impeach the testimony of Bias, and we are unable to say, what effect it would have had upon the jury in dealing with his testimony. It is true that Bias Bryant's testimony is given in nar-

rative form in the record, and the exact questions asked do not appear, but we think it is easy enough to infer from the answers given what the question was, and that the answers furnish a sufficient predicate for the impeaching questions addressed to Mr. Kelley. It seems to us that the circuit judge erred in not permitting the question to be propounded to Mr. Kelley.

The third assignment of error is based on the ruling of the court in permitting Rushing Davis, a witness for the defendant, to answer the following question propounded to him by the state attorney, viz: "Did you at any time tell your brother out there that you had killed Brown or any other negro at that place?"

It appears from the record that on the cross-examination of W. J. Davis, a witness for the defendant, he was in some way led into stating several immaterial matters relative to his brother, Rushing Davis—as for instance, that he had written his father stating there were two indictments against his brother, and that "Mr. Atwall and Campbell at Laurel Hill and Mr. Ham had told me (Davis) that there were two indictments against my brother." None of these statements were objected to by the defendant, and no motion made to strike the testimony. On the contrary, on the re-direct examination W. J. Davis further said: "My brother had gotten into some serious difficulty in this county. A darky had been killed at my place and it was laid to my brother. He told some of the darkies on the place that he killed him. I heard him say that and I did not want him back here." This testimony was not objected to by the state, though, like the foregoing, it was immaterial and irrelevant to the issue being tried.

The general rule is that the answer of a witness respecting any fact irrelevant to the issue will be conclusive, and irrelevant questions cannot be put to a witness for the mere purpose of impeaching his credit by con-

tradicting him. 3 Taylor on Ev. §1435 *et seq.*; Livingston v. Roberts, 18 Fla. 70; Stewart v. State, 42 Fla. 591, 28 South. Rep. 815; Myers v. State, 43 Fla. 500, 31 South. Rep. 275. We can discover no reason why the state attorney drew these irrelevant matters out on the cross-examination of W. J. Davis except for the purpose of impeaching him, and under the law, we are of opinion that the court erred in permitting the state attorney to ask the question of Rushing Davis which is the basis of this assignment. If parties are to be permitted to go into all sorts of collateral questions in the examination of witnesses the administration of the law would be greatly impeded, if not frustrated.

The fourth assignment involves the same question as the foregoing one, and the same principles apply.

The fifth assignment is founded on the refusal of the court to instruct the jury not to consider the following language used by counsel for the state in his concluding argument to the jury, to-wit: "Gentlemen of the jury, in my judgment the evidence in this case amply warrants and demands a verdict of guilty of murder in the first degree, and I ask you to return a verdict of murder in the first degree against this defendant." It is doubtless improper for a prosecuting officer to state to a jury his personal opinion as to the guilt of a defendant, irrespective of the evidence in the case, but it is certainly competent for him to argue from the evidence the defendant's guilt to show what evidence produces the conviction in him and should convince them. People v. Hess, 85 Mich. 128, 48 N. W. Rep. 181; 2 Ency. Pl. & Pr. 726. We find no error in this ruling.

For the errors pointed out the judgment below is reversed and a new trial granted.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.