NICHOLAS P. MYERS, OTHERWISE CALLED NICK MYERS, AND ROBINSON MYERS, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. After a trial juror is sworn in chief it is too late to challenge him peremptorily.

2. Objections to the time or manner of swearing trial jurors in chief must be followed by an exception to the ruling in order to be available upon writ of error.

3. An objection to a question propounded to a witness followed by an exception to the ruling permitting it, will not be considered by an appellate court where no testimony was given in answer to the question objected to.

4. A trial judge in his discretion may permit leading questions to be propounded to witnesses, and in this State the exercise of such discretion is not reviewable by the Supreme Court upon writ of error.

5. If the State be permitted upon cross-examination of a defendant's witness to interrogate him respecting a supposed prior statement supposed to be inconsistent with his present testimony and the witness denies making the remarks attributed

to him, and no effort is made by the State to prove such former prior statement, no ground of reversal exists on account of such cross-examination, even though defendant's objections thereto ought to have been sustained.

6. A witness can not be cross-examined respecting matters collateral and immaterial and beyond the scope of the direct examination in order to contradict him by other evidence, so as to discredit his testimony.

7. In order to admit proof under section 1102 Revised Statutes that a witness made a former statement relative to the subject-matter of the case, inconsistent with his present testimony such former statement must in fact be inconsistent with the present testimony of the witness, and must relate to material matters pertaining to the subject-matter of the cause.

8. Evidence offered by a defendant in a criminal cause to the effect that a person not a witness in the case, and whose alleged improper conduct is not shown to have been known to or approved by any witness for the State or any one in any manner connected with the prosecution of the defendant, attempted to procure a witness produced by defendant to give false evidence against him by threats of criminal prosetion, is properly excluded.

9. As a general rule the opinion of a witness as to the guilt or innocence of an accused person is not admissible in evidence and therefore in general a witness can not be contradicted or impeached by proof as to his opinion of the merits of a case, by cross-examination or otherwise.

10. An instruction to the effect that the evidence of an accomplice should be received by the jury with great caution, but if the testimony carries conviction, and the jury after careful consideration of all the evidence, are convinced of its truth, they should give to it the same effect as would be allowed to that of a witness who is in no respect implicated in the offence, is correct.

11. One conspirator can not be held liable criminally for every accidental result arising from acts of co-conspirators while engaged in the execution of the common purpose, but only for such accidents as could reasonably have been foreseen to occur, or such as would probably happen in the execution of the conspiracy agreed upon.

12. An instruction to the effect that if the act of one conspirator proceeding according to the common intent terminates in a criminal result, though not the particular result meant, all the conspirators are liable; that is a person may be guilty of a wrong he did not specifically intend, if it came naturally even though accidentally through some other specific or general evil purpose is unobjectionable as applied to prosecutions

for unlawful homicide when the facts warrant it, at least to prosecutions for grades of unlawful homicide in which no specific intent is required.

13. An instruction to the effect that the value of circumstantial evidence depends upon the conclusive nature and tendency of the circumstances relied on to establish any controverted fact; that they must not only be consistent with guilt but inconsistent with innocence; that such evidence is insufficient where, assuming all to be proved which the evidence tends to prove, some other reasonable hypothesis of innocence may still be true, for it is the actual exclusion of every other reasonable hypothesis but that of guilt which invests mere circumstances with the force of proof; that what circumstances will amount to proof can never be matter of general definition, the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury; that absolute, metaphysical demonstrative certainty is not essential to proof by circumstances, but that it is sufficient if they with all the other evidence, produce moral certainty to the exclusion of every reasonable doubt, is correct.

14. In a criminal case where the trial consumed about seven days, and more than thirty witnesses were examined, there was no reversible error in giving an instruction as follows: "This case has occasioned a great deal of trouble and much cost to the State and county, and has taken up an unusual amount of the time of the court, and it is important both to the State and defendants that the jury should arrive at some verdict. The jury should agree on a verdict. No juror from mere pride of opinion hastily formed or expressed should refuse to agree, nor, on the other hand, should he surrender any conscientious views founded on the evidence. It is the duty of each juror to reason with his fellows concerning the facts with an honest desire to arrive at the truth, and with a view of arriving at a verdict. It should be the object of all the jury to arrive at a common conclusion and to that end to deliberate together with calmness. It is your duty to agree upon a verdict if that be possible without a violation of conscientios convictions."

15. Under a count in an indictment for murder charging that A inflicted the mortal wound, and that B was present aiding and abetting, both may be convicted though the evidence shows that B inflicted the mortal wound and that A was present aiding and abetting.

16. An instruction containing the proposition that "if the guilt of the prisoner is to be established by a chain of circumstances, and the jurors have a reasonable doubt in regard to any one of them, that one ought not to have any influence in making up their verdict," is properly refused.

17. Where the trial court by an instruction cautions the jury against conviction from prejudice or on insufficient evidence, and directs them to acquit an accused unless satisfied from the evidence beyond a reasonable doubt of his guilt, it may properly refuse to give requested instructions cautioning the jury against hasty conclusions. as to defendant's guilt from the cruel, brutal and revolting manner of the killing of the deceased as disclosed by the evidence.

18. The trial court properly refuses instructions containing propositions already substantially given in charges though couched in different language.

Writ of Error to the Circuit Court for Marion County.

The facts of the case are stated in the opinion of the Court.

*Raymond B. Bullock*, for Plaintiffs in Error.

*William B. Lamar*, Attorney-General, for the State.

CARTER, J.

Nicholas P. Myers, otherwise called Nick Myers, was convicted of murder in the third degree, and Robinson Myers was convicted as an accessory before the fact, upon their joint trial in the Circuit Court of Marion county, held in October, 1900, and from the sentences imposed sued out this writ of error.

It appears from the bill of exceptions that a jury consisting of twelve named persons came, and each of said persons was ordered by the judge sworn in chief as tendered by the State and accepted by the defendants, to which defendants then and there objected and gave notice of their right to challenge any of said jurors so sworn, if

after twelve were sworn in chief individually the number of peremptory challenges to which either of defendants was entitled was not then exhausted; and thereafter Nicholas P. Myers not having exhausted his peremptory challenges before any witness was put upon the stand and before the jury was sworn collectively submitted his peremptory challenge to one of said jurors which was denied by the court for the reason that the jurors had been selected on the previous day, and tendered to the defendant and each and all of them accepted and sworn as accepted, and therefore the challenge came too late, which last named ruling was excepted to and is made the basis of the first assignment of error. It clearly appears that the juror challenged had been sworn in chief before the peremptory challenge was interposed. Under such circumstances the challenge came too late and was properly disallowed. Bradham v. State, 41 Fla. 541, 26 South. Rep. 730. We do not understand that counsel deny the general proposition that a peremptory challenge must be interposed before the juror is sworn, but he contends that the court should have deferred swearing any of the jurors until the full number had been selected and accepted, and that by swearing them in chief singly as they were accepted, the right to peremptory challenge a juror was prematurely taken away. That question is not presented for our consideration in this case. No exception was taken to the time or manner of swearing the jurors. It is true objection was made, but the objection alone without any exception does not present the question for our consideration. Alexander v. United States, 138 U. S. 353, 11 Sup. Ct. Rep. 350.

The second assignment of error complains that the court erred in admitting evidence in reply to the following question alleged to have been propounded to Mrs. Caroline Arms, a State's witness, to-wit:   Was there any reason why he (I. O. Arms, the deceased) should leave home?  We do not find from the bill of exceptions that the precise question stated was propounded, but do find that the witness was asked "do you know of any reason why he (Arms) should leave his home?"   Which was objected to as seeking the opinion of the witness. The objection was overruled and an exception taken, but the question was not answered by the witness.   As no testimony was given in reply to the question, defendants have no cause to complain of the ruling.

The deceased was last seen alive about 4 o'clock p. m. December 22, 1897, engaged in work near his house.   He failed to appear at supper time, and during that night and the next day parties were searching the neighborhood for him.   Following certain tracks leading from a place near where was last seen, members of the searching parties came upon a fire that had evidently been made of logs and which was nearly burned out, and in this fire was a frame of bones, and several articles which it was claimed deceased had with him at the time of his disappearance. One witness, J. W. Elkins, was asked to describe what he found at the fire, and replied:   "I took a stick and raked out fragments of bones, some of the pieces I thought were skull bones, one piece was the jaw bone, and finger bones I took them to be."   Immediately following this answer of the witness in the bill of exceptions is the statement of an exception as follows:  "Hereupon the defendants' counsel objects to witness testifying to matters of opinion, and the said judge opinion and decis-

ion overruling said objection, to which ruling said defend-
ants then and there excepted." Upon this exception is
based the third assignment of error, to the effect that the
court below admitted improper evidence against defend-
ants, in that the witness Elkins was permitted to give his
opinion as to the kind of bones taken from the fire. There
was no objection to the admission of the evidence quoted,
nor was there an objection to the question eliciting it,
nor was there a motion to strike it out. The exception as
presented to us does not seem to be aimed at any particu-
lar testimony, and is not sufficient to require us to con-
sider the admissibility of the particular testimony men-
tioned in the assignment of error based thereon.

The fourth assignment of error complains that the
court erred in permitting the witness A. J. Smith to tes-
tify that in his opinion certain burned flesh found in or
near the fire before mentioned was the heart and lungs of
a human being. After a careful examination of the bill
of exceptions we are unable to find that any objection was
raised or any exception taken to any ruling of the court
with reference to the testimony of the witness named,
and this assignment of error is therefore without an
objection and exception to support it.

The fifth, sixth, seventh and eighth assignments of
error are based upon exceptions taken to rulings of
the court overruling objections to questions propounded
to the State's witness George Drawdy. The ground of
these objections was that the questions were leading. The
trial judge in his discretion may permit leading questions
to be propounded to witnesses, and under our decisions
the exercise of this discretion is not reviewable in this
court upon writ of error. Coker and Scheiffer v. Hayes,
16 Fla. 368; Southern Express Co. v. Van Meter, 17
Fla. 783; 35 Am. Rep. 107.

The ninth and tenth assignments of error complain that the court erred in permitting certain questions to be propounded to the witnesses George Drawdy and W. H. Hayter, but the bill of exceptions fails to disclose the objections, rulings and exceptions necessary to support such assignments.

The State, against the objections and exceptions of defendants, was permitted on cross-examination of Andrew J. Higginbotham, a witness for defendants, to inquire as to whether a conversation occurred between the witness and one J. H. Wiley at a certain time, and as to what was said in that conversation, and as to whether certain specified remarks were not made by the witness in that conversation. The witness admitted the conversation, could not remember anything that was said by either party thereto, but denied positively making the remarks inquired about. The State Attorney announced that the purpose of the inquiry was to test the memory of the witness and also to lay the predicate for his impeachment. The defendants' objections were based upon the ground that the examination upon that subject was not in pursuit of the direct examination, and was immaterial and irrelevant. The State did not attempt to impeach the witness by showing what the conversation was, or that the witness made the remarks which he denied making. Under these circumstances, though the court may have erred in its rulings upon objections to the questions propounded, nothing harmful to the defendants, or affecting the credit of the witness was elicited, and therefore assignments of error numbers eleventh and thirteenth complaining of such rulings are not sufficient to cause reversal of the judgment.

We are unable to find from the bill of exceptions that the questions mentioned in the twelfth and fourteenth assignments of error were permitted to be put to the witness Andrew J. Higginbotham over the objections and exceptions of defendants, and therefore the assignments of error based upon alleged rulings as to those questions are not well taken.

The fifteenth assignment of error is to the effect that the court erred in permitting a certain question therein stated to be propounded to the witness Andrew J. Higginbotham. The bill of exception shows that this question was objected to by defendants, and that the objection was sustained. This assignment of error therefore finds no basis of support in the record.

The defendants' witness, Andrew J. Higginbotham, on his direct examination, testified in substance that he knew the defendants, and one T. J. McKinnon, a State witness; that he had been subpoenaed as a witness in the case by the State (though he had not been examined in behalf of the State); that he was at the house of N. P. Myers on December 22, 1897, the day of the alleged disappearance of the deceased; that he went there with T. J. McKinnon in the afternoon of that day; that he did not remain at Myers' very long—did not get off his horse; that he left Myers' about sundown, went about two and a half miles to his home and reached there about dusk. He also testified that he had been indicted in the same case, and was interrogated as to certain conduct on the part of and threats made against him by one Hunnicut, a detective who, it is claimed, was engaged by the deceased's wife to investigate the alleged murder of her husband, not necessary to be specially noticed in this connection with the assignments of error

we are now about to consider. On cross-examination he
stated that he went to Myers' house to see a person named
Toph about selling him some goats, and to borrow Myers'
gun; but denied that he said anything about borrowing
the gun while there. He also stated that he did not see
Myers on that occasion, and therefore did not ask for
the gun. He was then asked if he did not meet Myers
not long afterwards and tell him he was there that day for
the purpose of borrowing his gun. Defendants objected
to this question on the ground that it was not in pursuit
of the direct examination, but the court overruled the
objection and defendants excepted. This question was not
answered by the witness, and the witness was then asked
if he did not at any time subsequent to the visit to Myers'
house engage Myers in conversation relative to the fact
that witness had been to his house to borrow his gun, to
which witness replies "not that I know of." This question
and answer were not objected to. During the subsequent
cross-examination the witness was asked if in his testi-
mony before the grand jury in this case, while being
examined by Neill M. Allred, acting State Attorney, he
did not testify that on December 22, 1897, he went to
Nick Myers' house for the purpose of borrowing Myers'
gun; that when he got there he found Myers absent from
house; that afterwards he met Myers and in speaking of
the visit to Myers' house on December 22, Myers said he
was absent and had his gun with him. The witness
denied having so testified, and stated that he said nothing
with reference to the gun in his testimony before the
grand jury. The defendants objected to the questions
upon the ground that they were not in pursuit of the
examination in chief, and as being irrelevant and imma-
terial. The court overruled the objections; to which

exceptions were taken. The court thereupon instructed the jury that neither the questions to nor answers of the witness about his testimony before the grand jury were to be taken as affirmative proof of the guilt of either of the defendants, but were admitted for the sole purpose of laying the foundation for the impeachment of the witness or of showing his interest in the cause, and must be considered by the jury solely in that light. In rebuttal the State was permitted over objections and exceptions of the defendants to prove by N. M. Allred that the witness Higginbotham testified before the grand jury that in a conversation between Higginbotham and N. P. Myers, subsequently to the disappearance of Arms, that Myers stated in substance that he knew Higginbotham had gone to his house on the day of Arms' disappearance to get his gun, and that he, Myers was out hunting at the time. The court thereupon instructed the jury that neither the statement of Higginbotham nor the statement of Allred that Myers was out hunting was to be taken as evidence that Myers was out hunting. Upon the facts stated the sixteenth, seventeenth and nineteenth assignments of error are based, to the effect that the court erred in allowing the witness Higginbotham to testify in relation to his testimony before the grand jury; and as to his conversations with N. P. Myers, and in permitting the witness Allred to testify as to the evidence of the witness Higginbotham before the grand jury. As we have stated, the only question objected to upon the subject of the witness' conversation with Myers was not answered by the witness. As no testimony was given in response to that question, the error in overruling defendants' objections thereto, if any, is immaterial. We are of opinion, however, that the court erred in permitting the witness to be interrogated

on cross-examination respecting his previous testimony before the grand jury. His testimony before the grand jury could not, of course, have been used for any purpose except to show that the witness had made a statement contradictory of his testimony then given, for the purpose of affecting credibility. The Circuit Judge so held, and in his instruction to the jury, given at the time it was admitted, confined their consideration of such evidence to that special purpose. We shall, therefore, inquire whether it was proper upon the cross-examination to lay the predicate for the introduction of evidence on the part of the State respecting the witness' testimony before the grand jury, in order to impeach him. In his direct examination the witness was not interrogated with reference to any conversation had by him with Myers, nor with reference to his testimony before the grand jury. The cross-examination was, therefore, upon matters outside of and beyond the scope of the direct examination, and if the cross-examination was with reference to collateral and immaterial matters, it would be error to permit it merely for the purpose of contradicting the witness by other evidence, in order to discredit his testimony. Eldridge v. State, 27 Fla. 162, 9 South. Rep. 448. Not only so, but the alleged contradictory statement must in fact be inconsistent with the witness' present testimony in order to admit proof of it. The statute provides that "if a witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the case and inconsistent with his present testimony, does not distinctly admit that he has made such statement, proof may be given that he did in fact make it, but before such proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be men-

tioned to the witness, and he must be asked whether or not he made such statement." Section 1102 Revised Statutes. The only material matter in the supposed conversation between Myers and the witness was Myers' statement that he was out hunting, or that he had his gun with him the evening that the witness was at his house. This would have been material evidence in behalf of the State's theory that deceased was shot by Myers about the time the witness Higginbotham was at his house. The witness was not asked whether Myers ever told him that he was out hunting, or that he had his gun with him, and therefore his former statement to that effect before the grand jury was not inconsistent with his present testimony, so as to justify cross-examination as to such former statement, and subsequent proof that he made such former statement upon his denying that he made it. He was simply asked if subsequently to his visit to Myers' house he did not engage Myers in conversation relative to the fact that witness had been to his house to borrow his gun, to which witness replied "not that I know of." This question and the answer were collateral and wholly immaterial to the issues and could not therefore serve as a foundation for the subsequent questions relative to his testimony before the grand jury, to the effect that he did have such a conversation, and for the introduction of proof that he did so testify before the grand jury upon his denial. Loving v. Commonwealth, 80 Ky. 507. .

The eighteenth assignment of error is expressly abandoned.

Defendants offered to prove by the witness Higginbotham that "D. H. Hunnicut was a detective employed to work up this case, and attempted to procure false evidence from the witness by threats of criminal prosecution

against said witness," but the court refused to admit such proof and defendants excepted. This ruling constitutes the basis of the twentieth assignment of error. Hunnicut was not a witness in the case, nor was it shown or attempted to be shown that his alleged improper conduct was known to or approved by any witness for the State or any one in any manner connected with the prosecution of the defendants. Under these circumstances the proof offered was rightly rejected.

The twenty-first assignment of error is based upon the ruling excluding a question propounded by defendant upon cross-examination to George W. Drawdy, a witness for the State, inquiring whether the witness at a designated time and place did not say to defendants' attorney he was satisfied that N. P. Myers was not and could not have been the party that murdered Arms, and state his reasons therefor. The ruling was duly excepted to. There was no eye witness to the homicide, but the evidence consisted of circumstances testified to and of certain admissions or declarations made by defendant N. P. Myers before and after the alleged homicide. The witness Drawdy testified to certain declarations of N. P. Myers prior to the disappearance of Arms, tending to show ill-will against the deceased and an intention to run him away from the country or otherwise rid the community of him, and to declarations on his part after the disappearance of Arms, to the effect that if Arms was killed he did not do it, and did not know who did, but that it was the best thing that could happen; that he was no fool and "if all keep our mouths shut this thing's done now, and will never come to light." As a general rule the opinion of a witness as to the guilt or innocence of an accused person is not admissible in evidence, and therefore a witness

can not in general be contradicted or impeached by proof as to his opinion of the merits of a cause. We see nothing in the testimony of the witness to exempt the present case from the general rule. Drawdy had not testified to any facts showing that he knew Myers was guilty, nor had he expressed the opinion that he was. It was therefore not proper to interrogate him as to whether he had not expressed himself as satisfied that Myers was not guilty and as to his reasons for such opinion. Commonwealth v. Mooney, 110 Mass. 99. See, also, Kenedy v. Commonwealth, 77 Ky. 340; Schell v. Plumb, 55 N. Y. 592.

The twenty-second and twenty-third assignments of error are expressly abandoned.

The defendants excepted to the following instruction given by the court: "The evidence of an accomplice should be received by the jury with great caution, but if the testimony carries conviction, and the jury, after careful consideration of all the evidence, are convinced of its truth, they should give to it the same effect as would be allowed to that of a witness who is in no respect implicated in the offense." This exception is made the basis for the twenty-fourth assignment of error. The objections urged to this instruction are two: first, that it is broad enough to include the testimony of accomplice witnesses for the defendants, and therefore disparages their testimony; second, that it omits to inform the jury that such testimony should not be relied upon unless the jury are convinced of its truth beyond a reasonable doubt. As to the first objection, it is sufficient to say that no witnesses were sworn on behalf of defendants that can be claimed to have been accomplices in the crime. In the brief it is stated that Mack Jameson and Andrew J. Higginbotham were such. Upon examination of the bill of exceptions

we do not find that Mack Jameson was sworn as a witness in the case. Higginbotham was a witness, but there is nothing in the evidence tending to show that he was an accomplice. It is true that he was indicted as an accessory before and after the fact to the crime alleged to have been committed by N. P. Myers, but before this trial a *nol. pros.* had been entered as to him, and no evidence produced upon the trial tended to show any connection on his part with the crime alleged to have been committed. The instruction could not have any application to any of defendants' witnesses, but only to certain witnesses upon the part of the State. As to the second objection, the instruction stated that if the testimony of an accomplice carries conviction, and the jury, after careful consideration of all the evidence, are convinced of its truth, they should give to it the same effect as would be allowed to that of a witness who is in no way implicated in the offence. This language has been approved in Bacon v. State, 22 Fla. 51, and Shiver v. State, 41 Fla. 630, 27 South. Rep. 36. The jury must be satisfied from the evidence in the case of defendants' guilt beyond a reasonable doubt before they are authorized to convict, and in other instructions the court so instructed the jury in this case. Under these circumstances we can not say that the isolated instruction complained of is erroneous because of the omission mentioned in the second objection.

Instruction eighteen given by the court is as follows: "18. If the act of one conspirator, proceeding according to the common intent, terminates in a criminal result, though not the particular result meant, all the conspirators are liable. That is, a person may be guilty of a wrong he did not specifically intend, if it came naturally or even accidentally through some other specific or general evil

purpose."    To  this  instruction  an  exception  was  taken,
and  such  exception  is  made  the  basis  of  the  twenty-fifth
assignment  of  error.    The  specific  objection  urged  against
this  instruction  is,  in  the  opinion  of  the  court,  untenable;
but,  in  accordance  with  the  ruling  in  the  case  of  Easterlin
v.  State,  decided  at  the  present  term  (43  Fla.  565,  31
South.  Rep.  350),  we  will  examine  it  with  a  view  of
ascertaining  if  it  is  erroneous  upon  any  other  ground,  as
applied  to  the  facts  of  this  case.    It  is  the  opinion  of  this
court  that  the  instruction  is  too  broad,  in  that  it  holds  one
conspirator  liable  for  the  result  of  every  accident  resulting
from  the  acts  of  a  co-conspirator  while  engaged  in  the
execution  of  the  common  purpose,  no  matter  for  what
purpose  the  conspiracy  was  formed,  and  even  though  the
accident  producing  the  result  was  one  which  the  parties
could  not  reasonably  have  anticipated  as  a  result  of  any
act  in  the  execution  of  the  common  purpose.    To  illustrate
our  meaning,  take  the  case  put  by  Mr.  Bishop  (paragraph
5,  Sec.  637,  Vol.  1,  New  Criminal  Law),  that  where  two
combine  to  fight  a  third  with  fists,  if  death  accidentally
results  from  a  blow  inflicted  by  one,  the  other  also  is
answerable  for  the  homicide;  but  if  the  one  resorts  to  a
deadly  weapon  without  the  other's  knowledge  or  consent,
he  only  is  liable.    In  the  one  case,  death  from  a  blow  with
the  fist  might  have  been  reasonably  apprehended  by  the
parties,  even  though  neither  party  intended  to  kill;  but
in  the  other  case,  the  party  who  did  not  strike  the  blow
could  not  reasonably  have  foreseen  the  use  of  a  deadly
weapon  by  his  co-conspirator.    Now,  if  the  two  parties
should  combine  to  fight  another  with  fists,  and  during
the  encounter  a  pistol  should  accidentally  drop  from  the
pocket  of  one  of  the  conspirators  and  striking  some  object
discharge  its  contents  into  the  body  of  the  third  party,

killing him, we apprehend the other conspirator could not be held guilty of unlawful homicide, if he did not know his co-conspirator was armed with the pistol, for he could not reasonably have foreseen the happening of such an accident during the execution of the conspiracy agreed upon. In our judgment one conspirator can not be held liable criminally for every accidental result arising from acts of co-conspirators while engaged in the execution of the common purpose, but only for such accidents as could reasonably have been foreseen to occur, or such as would probably happen in the execution of the conspiracy agreed upon. If the instruction complained of had used the expression "even though accidentally," instead of the words "or even accidentally," it would have been unobjectionable as applied to cases of unlawful homicide, at least to grades thereof in which no specific intent is required. Commonwealth v. Campbell, 7 Allen, 541; S. C. 83 Am. Dec. 705; Lamb v. People, 96 Ill. 73; Spies v. People, 122 Ill. 1, 12 N. E. Rep. 865; S. C. 3 Am. St. Rep. 320, and note page 477; Stephens v. State, 42 Ohio St. 150; State v. Barrett, 40 Minn. 77, 41 N. W. Rep. 463; 1 Bishop's New Criminal Law, §§ 636-641. In the opinion of a majority of the court the error found in giving this instruction was upon the facts of the case prejudicial and harmful to plaintiffs in error, and therefore ground for reversal. The Chief Justice is of opinion, however, that in view of the entire testimony and the verdict rendered by the jury, the error in this respect was without injury to plaintiffs in error, and therefore not ground for reversal

The defendants excepted to the nineteenth instruction given by the court, and this exception constitutes the basis of the twenty-sixth assignment of error. The

instruction is as follows: "The value of circumtantial evidence depends upon the conclusive nature and tendency of the circumstances relied on to establish any controverted fact. They must not only be consistent with guilt, but inconsistent with innocence. Such evidence is insufficient where, assuming all to be proved which the evidence tends to prove, some other reasonable hypothesis of innocence may still be true, for it is the actual exclusion of every other reasonable hypothesis but that of guilt which invests mere circumstances with the force of proof. What circumstances will amount to proof can never be matter of general definition; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. Absolute, metaphysical and demonstrative certainty is not essential to proof by circumstances; it is sufficient if they, with all the other evidence, produce moral certainty to the exclusion of every reasonable doubt." The objection presented to this charge is that the words "beyond a reasonable doubt" should have been inserted after the words "the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury." Considering the entire instruction, we think it enforces the requirement that the jury must believe from the evidence beyond a reasonable doubt that defendants are guilty, in order to convict upon circumstantial evidence, and that the insertion of the words suggested would have added nothing to its meaning. Jenkins v. State, 35 Fla, 737, 18 South. Rep. 182.

The twenty-seventh, twenty-eighth and twenty-ninth assignments of error are expressly abandoned.

The thirtieth assignment of error complains of the twenty-sixth instruction given by the court, which was duly excepted to and is as follows: "This case has occa-

sioned a great deal of trouble and much cost to the State
and county and has taken up an unusual amount of the
time of the court, and it is important both to the State
and defendants that the jury should arrive at some verdict.
The jury should agree on a verdict. No juror from mere
pride of opinion hastily formed or expressed should refuse
to agree; nor, on the other hand, should he surrender
any conscientious views founded on the evidence. It is
the duty of each juror to reason with his fellows concern-
ing the facts with an honest desire to arrive at the truth
and with a view of arriving at a verdict. It should be the
object of all the jury to arrive at a common conclusion,
and to that end to deliberate together with calmness. It
is your duty to agree upon a verdict if that be possible,
without a violation of conscientious convictions." It
appears from the bill of exceptions that the trial consumed
about seven days,and that more than thirty witnesses were
examined in the case. In the case of Sigsbee v. State,
decided at the present term, we had occasion to consider
an instruction very similar to the one now under consid-
eration, and upon the authority of the decision in that case
we do not think there was any reversible error in giving
this instruction.

The thirty-first and thirty-second assignments of
error are based upon the refusal to give instructions num-
bers two and three requested by defendants. These
instructions were properly refused because the court had
already given in its instruction number nineteen the sub-
stance of these refused instructions.

The thirty-third and thirty-fourth assignments of
error are predicated upon the court's refusal to give the
defendants' fifth and sixth instructions requested, to
which rulings exceptions were duly taken. These instruc-

tions asserted propositions, among others, to the effect that the State must prove beyond reasonable doubt that N. P. Myers actually did commit the alleged homicide, and that being charged as principal, he must be shown to have committed the crime himself, and that no matter how strong the jury might believe he procured the crime to be committed, he could not be convicted unless it was shown that he actually committed the homicide himself. Plaintiffs in error admit that the court refused the instructions on the ground that they preclude the idea that N. P. Myers might be principal in the second degree. We are of opinion that the court correctly refused the instructions for the reason stated. One of the counts of the indictment upon which the trial was had charged N. P. Myers with inflicting the mortal wound, and Robinson Myers with being present aiding and abetting, &c. Under this count both might have been convicted though the evidence showed that Robinson Myers inflicted the mortal wound and that N. P. Myers was simply present aiding and abetting, &c. Bryan v. State, 19 Fla. 864.

The thirty-fifth and thirty-sixth assignments of error are expressly abandoned.

The thirty-seventh assignment of error is based upon the court's refusal to give the thirteenth instruction requested by defendants, to which refusal an exception was duly taken. This instruction is as follows: "If the guilt of the prisoner is to be established by a chain of circumtances, and the jurors have a reasonable doubt in regard to any one of them, that one ought not to have any influence in making up their verdict. In order to warrant a conviction of crime on circumstantial evidence, each fact necessary to a conclusion of the guilt of the prisoner must be proved by competent evidence beyond a

reasonable doubt, all the facts must be consistent with each other and with the main facts sought to be proved, and the circumstances together must be of a conclusive nature, and leading to a satisfactory conclusion, and producing the conviction to a reasonable and moral certainty that the accused, and no other person, committed the offence charged." Assuming, but not deciding, that the instruction asserts correct propositions of law and might with propriety have been given, we are of opinion that the instructions given by the court were sufficiently explicit upon the subjects covered by this instruction to justify the court in refusing it. In addition to instruction number nineteen given by the court, which we have already quoted in this opinion, the court instructed the jury that to authorize conviction of either of the defendants the jury must be satisfied beyond a reasonable doubt, first, that Arms was killed as alleged, and, second, that defendants were connected with such killing as charged; that the fact that a man was killed and that he was unlawfully killed may be proved as well by circumstances as by positive testimony if they are sufficiently strong and connected to satisfy the jury beyond a reasonable doubt; that defendants are presumed to be innocent until they are proved to be guilty beyond a reasonable doubt, and they are entitled to every reasonable doubt arising from the evidence; a reasonable doubt is one conformable to reason —one which a reasonable man would entertain; that it is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they can not say they feel an abiding conviction to a moral certainty of the truth of the charge. At defendants' request the judge cautioned the jury against conviction on insufficient evi-

dence, telling them that unless they were satisfied from the evidence beyond a reasonable doubt of the guilt of the accused, they should render a verdict of not guilty; that if they had a reasonable doubt of the presence of the accused at the scene of the alleged homicide they must find them not guilty; that the innocence of defendants must be presumed until the case against them is in all its material circumstances proved beyond a reasonable doubt; that to find them guilty, the evidence must be strong and cogent, and unless it is so strong and cogent as to show defendants' guilt to a moral certainty the jury must acquit, and if there is a probability of defendants' innocence the jury must render a verdict of not guilty. We think the rules applicable to the weight to be given circumstantial evidence, the degree of proof requisite to convict, the doctrine of reasonable doubt and its relation to circumstantial evidence and to every material fact necessary to be proved, whether by circumstances or by positive evidence, were given with such fullness in the instructions mentioned as to justify the court in declining to further expound them in the request presented. We are also of opinion that the court was justified in refusing the thirteenth requested instruction, because of its confusing and misleading tendency. Graves v. People, 18 Colo. 170, 32 Pac. Rep. 63.

The thirty-eigth and thirty-ninth assignments of error are expressly abandoned.

The fortieth assignment of error is predicated upon the court's refusal to give the seventeenth instruction requested by defendants, the refusal to give which was duly excepted to. The refused instruction is as follows: "The fact that the alleged crime may have been committed in a brutal, cruel, and revolting manner, that foul

and cowardly means may have been resorted to in the accomplishment of the same, will not authorize you to come to a hasty conclusion as to the guilt of the individual charged with the murder; nor will you for the reasons stated be relieved of your duty as jurors to carefully weigh and closely scrutinize the evidence in all its phases; in other words, you are bound to listen to and give weight to the testimony the same as if the alleged homicide may have been committed in a manner less brutal and revolting and by means less cowardly and foul. The degree of cruelty should not weigh at all in the determination of the question of guilt or innocence." The court did instruct the jury at defendants' request as follows: "I further instruct you, gentlemen of the jury, and caution you against conviction from prejudice or insufficient evidence. Unless you are satisfied from the evidence beyond a reasonable doubt of the guilt of the accused, you should render a verdict of not guilty, however strong may be your prejudice if any you have." The court evidently considered the caution given as sufficient under the curcumstances of the case, and we see nothing in the record which justifies us in saying it was not. We can not, therefore, hold the court in error for refusing the seventeenth instruction.

The forty-first, forty-third and forty-fourth assignments of error are expressly abandoned.

The forty-second assignment of error is based upon the refusal of defendants' nineteenth requested instruction, which is as follows: "The court further instructs you that it does not devolve upon the defendants to account for or to show the whereabouts of the alleged deceased I. O. Arms." The court's instructions to the jury distinctly told them that the burden of proof was

upon the State; that defendants were presumed to be innocent, and that the material facts necessary to constitute the crime charged must be proven beyond a reasonable doubt. The death—not simply the "whereabouts" —of Arms was a material fact to be proven and embraced in the charge that the burden of proof was upon the State to prove material elements of the crime. The refused instruction merely asserts that the defendants are not required to show the "whereabouts" of Arms, which is but stating in an indirect way that the State must prove it to entitle it to a verdict. In view of the instructions given, we think the nineteenth instruction was properly refused.

The other assignments of error not expressly abandoned we do not deem it necessary to consider in view of the conclusion reached.

The judgments of conviction are reversed and new trials granted.