407 So.2d 1007 (1981)
Joseph L. GELABERT, Appellant,
v.
STATE of Florida, Appellee.
No. 81-380.
District Court of Appeal of Florida, Fifth District.
December 23, 1981.
*1008 James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and James Dickson Crock, Asst. Atty. Gen., Daytona Beach, for appellee.
COWART, Judge.
The issue on this appeal is whether evidence is admissible to contradict, and thereby impeach, a witness (particularly a defendant testifying in a criminal case) as to a factual matter that is not material to an ultimate issue in the case and is not otherwise admissible to discredit the witness (i.e., does not show bias, corruption or incompetency).
Appellant was charged with aggravated assault, § 784.021(1)(a), Fla. Stat. (1979), and improper exhibition of a dangerous weapon, § 790.10, Fla. Stat. (1979), as the result of a police officer, while responding *1009 to a report of a domestic disturbance, entering appellant's home and being confronted by the appellant wielding a butcher knife. Apparently the State's position was that appellant threatened the police officer under the mistaken impression that the officer was appellant's older son James who, estranged from the family and at odds with appellant, was supposed to be living in a foster home and not to be near appellant's home. Appellant disputed this characterization of the encounter and testified he was using the knife to fix a toy box for his youngest son Joseph. Over objection, the State was permitted on cross examination to question appellant at length concerning his relationship with his estranged son James including asking him if he, appellant, ever threatened James with a weapon. Appellant admitted only to having chased James with a stick. On rebuttal, the State, again over objection, was permitted to call and elicit testimony from appellant's neighbor that she had seen appellant chase James with a knife in his hands several weeks before the date of the alleged assault on the police officer. The jury acquitted the appellant of aggravated assault but convicted the appellant on the weapon exhibition charge.
On this appeal, appellant claims the questions to him on cross-examination as to his relationship with his son James and the rebuttal testimony of the neighbor were both inadmissible and prejudicial. We agree and reverse.
Since the right to ask any particular question on cross-examination when it relates to a collateral matter is normally within the discretion of the trial court, any denial of an objection to the question normally is not considered so prejudicial as to require reversal. However, when a question, posed on cross-examination, relates only to a matter collateral and non-material to any issue at trial, the witness' answer to the question is deemed conclusive. Consequently, the witness cannot be impeached with regard to this testimony by any of the normal means of subsequent impeachment, including contradiction testimony by another witness. Although stated various ways, this general evidentiary philosophy of exclusion has been a part of Florida jurisprudence for many years. Thus, it has been said:
But the answer of a witness on cross-examination respecting any fact irrelevant to the issue will be conclusive, and no such question can be put on cross-examination merely for the purpose of impeaching his credit by contradicting him. Stewart v. State, 42 Fla. 591, 28 So. 815, 816 (1900).[1]
The reasoning behind the rule has been attributed to the evidentiary philosophy that a party cannot impeach his own witness and when the question is outside the scope of direct examination and on a collateral matter, the cross-examiner adopts the witness as his own.[2] However, commentators prefer to attribute the basis to substantial policy considerations: unfair surprise, undue prejudice, confusion of the issues, and finally, time wasting and its adverse effect on judicial economy.[3] The admissibility of contradictory evidence turns then on whether the issue is considered collateral *1010 or not. One proposed test is "could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradictions?"[4] There are generally two types of evidence that pass this test and are thus admissible: (1) facts relevant to a particular issue (which would therefore be admissible irregardless of their impeachment value) and (2) facts which discredit a witness by pointing out the witness' bias, corruption, or lack of competency (i.e., personal knowledge of the facts, ability to understand an oath, and ability to relate the facts at trial). It should be noted that, except for a judgment of conviction of a crime, evidence of the general immoral character of a witness is excluded from this second category. This second qualification to the general rule of exclusion, thereby allowing contradiction testimony, has likewise been a part of Florida jurisprudence for many years. As stated in Fields v. State, 46 Fla. 84, 35 So. 185, 186 (1903);
"For the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected with the cause or the parties thereto, upon which matters he may be contradicted by other evidence."
The above case law and philosophy relating to impeachment is incorporated into the Florida Evidence Code in section 90.608, Florida Statutes (1979), which provides in part:
90.608 Who may impeach. 
(1) Any party, except the party calling the witness, may attack the credibility of a witness by:
(a) Introducing statements of the witness which are inconsistent with his present testimony.

(b) Showing that the witness is biased.
(c) Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610.
(d) Showing a defect of capacity, ability or opportunity in the witness to observe, remember, or recount the matters about which he testified.
(e) Proof by other witnesses that material facts are not as testified to by the witness being impeached.
[emphasis added]
Contradictory testimony that falls within the first category (as set out above) is admissible under section 90.608(1)(e). With regard to the second category, evidence of bias (and implicitly corruption) is allowed under section 90.608(1)(b), evidence of lack of competency is allowed under section 90.608(1)(d), and evidence of the witness' general immoral character is allowed under 90.608(1)(c) but limited to evidence of the witness' reputation for untruthfulness by section 90.609 or evidence of a prior conviction by section 90.610.
In the instant case, the charges were based on appellant allegedly threatening a deputy with a knife when the deputy entered appellant's home. Although the two charges encompassed various issues, evidence of appellant's relationship with his estranged son and whether he had ever threatened him with a weapon or not was completely collateral to any of them. Whether or not appellant had ever threatened his son with a weapon was not an element of either crime or an issue by itself; neither did it tend to show bias, corruption, or lack of competency on the appellant's part, nor was it admissible as to appellant's character. It was error to permit appellant's cross-examination as to whether he had ever threatened his son James with a weapon; the State having received an answer to its improper inquiry, the error was compounded by allowing appellant's neighbor's contradictory (impeaching) testimony on rebuttal.
The testimony relating to the appellant's alleged assault on his son could have been held against him by the jury because it not only tended to impermissibly discredit *1011 appellant, but also was evidence of bad character and a propensity toward violence, both of which are inadmissible matters. In view of the fact that the charges in this case related to an alleged assault on a police officer with a knife, we are compelled to the opinion that these errors were not harmless but injuriously affected the substantial right of the appellant to be tried only on admissible evidence material to proper issues in the cause. See § 59.041 and § 924.33, Fla. Stat. (1979).
REVERSED AND REMANDED FOR A NEW TRIAL.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] For other examples, see Stinson v. State, 76 Fla. 421, 80 So. 506 (1918), Herndon v. State, 73 Fla. 451, 74 So. 511 (1917), Johnson v. State, 68 Fla. 528, 67 So. 100 (1914), and Myers v. State, 31 So. 275, 43 Fla. 500 (1901).
[2] This reasoning was applied in Eldridge v. State, 27 Fla. 162, 9 So. 448 (1891), wherein the court stated

The rules of evidence permit, in the discretion of the trial judge, a great latitude on cross-examination, when in his judgment such a course is essential to the discovery of truth; but they do not permit an inquiry into collateral matters in no way connected with the issue, for the purpose of contradicting a witness. A party has no right, on cross-examination, to interrogate a witness as to a distinct collateral fact for the purpose of contradicting him, and if such an examination is permitted by the judge under the latitude allowed on cross-examination as to such matter, the party examining makes the witness his own.
9 So. at 452.
[3] See, e.g., McCormick on Evidence § 47 (2nd ed. 1972); IIIA Wigmore on Evidence §§ 1000-03 (Chadbourn rev. 1970).
[4] This test is taken from the majority opinion in Attorney General v. Hitchcock, 1 Exch. 91, 104 (1847). Based on its definiteness, concreteness, and ease of application, it is chosen by Wigmore as the best test. IIIA Wigmore on Evidence § 1003 (Chadbourn rev. 1970).