428 So.2d 760 (1983)
Samuel Frederick HAIR a/k/a John Robertson, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-2216.
District Court of Appeal of Florida, Third District.
March 29, 1983.
*761 Bennett H. Brummer, Public Defender and R. James Pelstring, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and William Thomas and Charles A. Stampelos, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
BASKIN, Judge.
Defendant Hair, tried with co-defendant Jackson[*] for sexual battery and kidnapping, was granted a directed verdict of acquittal on the kidnapping charge but was convicted and sentenced to seven years' imprisonment for sexual battery. We find merit in two of the points raised on appeal and reverse. We hold that the trial court improperly precluded appellant from presenting to the jury testimony attacking the credibility of a state witness who was given hand signals by her father during cross-examination. We hold, in addition, that the trial court's instructions to the jury on principals to a crime was confusing and prejudicial.
After learning from a courtroom observer that Yvette Tanner, the victim of the alleged sexual batteries, received hand signals while testifying, defense counsel requested the court to conduct an inquiry outside the presence of the jury. Upon inquiry, the court clerk testified that he heard a low, muffled sound and that when he turned around, he heard the assistant state attorney say "shut up" to a man seated in the courtroom. The bailiff testified that from his position in the back of the courtroom, he had observed a man with his hand on his mouth during the cross-examination. During a pause in the testimony, the man put his head down. The trial judge stated that she had observed a man combing his hair and chewing gum, but nothing else. The assistant state attorney, however, reported that a man sat next to him in the first row of the spectators' gallery and attempted to engage him in conversation. Despite the prosecutor's admonition to be quiet, the man called "Yvette." At that point, the prosecutor forcefully grabbed him and told him to "shut up." Co-defendant Jackson's father testified that he observed the man giving the victim hand signals during her cross-examination and that when the witness put her head down, the man called her name to get her attention. Defense counsel requested the court to permit him to present testimony before the jury, arguing that the credibility of the state's witness was open to attack. The court denied the motion as well as a motion for mistrial.
During an evidentiary hearing conducted by the court outside the presence of the jury, Yvette Tanner admitted that the man in the courtroom was her father, but she denied seeing signals or gestures. Yvette's mother also denied that any prearranged signals existed between her husband and Yvette and stated that neither she nor her daughter had discussed the case with her husband. Defendant Hair, however, stated that he saw the witness's father shaking his head and giving hand signals to her during cross-examination, and that, in addition, he observed the father become angry at the assistant state attorney. Reasoning that it was obvious that the jury had witnessed the same behavior, the court concluded that testimony to the jury on the issue was unnecessary because "we don't need anybody to interpret for the jurors what they, themselves, have already seen." Accordingly, the court denied defense counsel's motion to strike the victim's testimony, denied renewed motions for mistrial, and denied a motion to present witnesses to impeach the victim's credibility.
Our reversal on this point is predicated upon the fact that a party may elicit facts tending to show bias, motive, prejudice *762 or interest of a witness, a right that is particularly important in criminal cases because "the jury must know of any improper motives of a prosecuting witness in determining that witness' credibility." Brown v. State, 424 So.2d 950 (Fla. 1st DCA 1983). Cross-examination may be utilized to demonstrate improper bias. Davis v. Ivey, 93 Fla. 387, 112 So. 264 (1927); D.C. v. State, 400 So.2d 825 (Fla. 3d DCA 1981); Porter v. State, 386 So.2d 1209 (Fla. 3d DCA 1980); Stripling v. State, 349 So.2d 187 (Fla. 3d DCA 1977); Jones v. State, 385 So.2d 132 (Fla. 4th DCA 1980). Because Yvette Tanner was the key prosecution witness and her father's conduct during her cross-examination raised a question about her motivation while testifying, we believe defense counsel should have been permitted to examine Tanner before the jury in order to discredit her testimony. The specific question we address concerns defendant's right to impeach the victim's credibility by introducing testimony of other witnesses.
Section 90.608, Florida Statutes (1979) provides, in pertinent part:
(1) Any party, except the party calling the witness, may attack the credibility of a witness by:
....
(b) Showing that the witness is biased.
....
(e) Proof by other witnesses that material facts are not as testified to by the witness being impeached.
Section 90.608(1)(b) has been construed to permit the presentation of evidence to show bias or motive. Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981). In Gelabert, the court noted two exceptions to the general evidentiary rule which excludes contradictory collateral evidence. Admissible are: "(1) facts relevant to a particular issue (which would therefore be admissible irregardless of their impeachment value) and (2) facts which discredit a witness by pointing out the witness' bias, corruption, or lack of competency... ." Id. at 1010; see 3 A. Wigmore, Evidence § 944 (Chadburn rev. 1970) (the prohibition of extrinsic testimony does not apply to the issue of emotional partiality upon which cross-examination is "an important but not ... exclusive mode of presentation").
Thus, since extrinsic evidence is admissible to show bias, prejudice, interest, and motive, the question before us is whether a defendant may present extrinsic evidence in the form of other witnesses to discredit the state's witness. The Supreme Court of the United States has recognized that the exposure of a witness's motivation is an important function of the constitutionally protected right of cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In addition, Florida courts have ruled that a defendant must be afforded wide latitude in the use of cross-examination to discredit a witness. See D.C.; Nelson v. State, 395 So.2d 176 (Fla. 1st DCA 1980); Harmon v. State, 394 So.2d 121 (Fla. 1st DCA 1980); Blair v. State, 371 So.2d 224 (Fla. 2d DCA 1979).
That the denial of the full right of cross-examination is harmful and fatal error is well-established. Coxwell v. State, 361 So.2d 148 (Fla. 1978); Porter; Nelson. Accordingly, when cross-examination alone is not sufficient to expose the possibility of improper motives in a witness, a defendant may present other impeachment testimony to demonstrate bias. Thus, in Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980), the court stated:
The exposure of a witness' motivation in testifying is a proper function of the constitutionally protected right of cross-examination... . Any evidence which tends to establish that a witness is appearing for the State for any reason other than merely to tell the truth should not be kept from the jury.
Id. at 108; see Kufrin v. State, 378 So.2d 1341 (Fla. 3d DCA 1980); Cowheard v. State, 365 So.2d 191 (Fla. 3d DCA 1978), cert. denied, 374 So.2d 101 (Fla. 1979). Refusal to permit inquiry by defense counsel concerning pending charges against the chief prosecution witness constituted reversible error in Blanco v. State, 353 So.2d 602 (Fla. 3d DCA 1977). The court stated:

*763 The law is clear that if a prosecution witness is presently or recently under actual or threatened criminal charges or investigation leading to such charges, the person against whom the witness testifies in a criminal case has an absolute right to bring those circumstances out on cross-examination or otherwise so that the jury will be fully apprised as to the witness' possible motive or self-interest with respect to the testimony he (or she) gives. (emphasis added).
Id. at 604 and cases cited. Unlike Duncomb v. State, 237 So.2d 86 (Fla. 3d DCA 1970), in which cross-examination was sufficient to permit the jury to appraise the witness's credibility on its own, the Hair jury was not made aware of the unusual circumstances occurring during Tanner's cross-examination. We therefore hold that the trial court erred in precluding Hair from presenting testimony concerning the signaling.
Defense counsel next contends that the court committed error in refusing to inform the jury that the instruction on principals to a crime did not apply to defendant Hair. Because the state's requested instruction referred to co-defendant Jackson's conduct with an unknown third party in the perpetration of the first rape upon the victim, the instruction left unclear whether it referred to Hair or to the unknown third party. Since the state has acknowledged that defendant Hair did not act in concert with any party when the second rape was committed, we find that the jury instruction misled the jury and prejudiced Hair's right to a fair trial. Itt-Nesbitt, Inc. v. Valle's Steak House of Fort Lauderdale, Inc., 395 So.2d 217 (Fla. 4th DCA 1981).
One other point merits discussion. Despite evidence of jury misconduct which would otherwise have called for corrective action, the withdrawal by defendant of his motion for mistrial, coupled with his stipulation that the trial proceed following removal of one juror, waived appellate review. Odom v. State, 375 So.2d 1079 (Fla. 1st DCA 1979); Williams v. State, 101 So.2d 877 (Fla. 1st DCA 1958); see McPhee v. State, 254 So.2d 406 (Fla. 1st DCA 1971). The jury conduct to which we refer was disclosed during extensive questioning by the trial court. One juror indicated to the court that prior to deliberations, he had expressed a belief to another juror concerning defendants' guilt, stating: "They're all probably guilty anyway, one way, you know  " He indicated that he and other jurors did not have a "final feeling" on the case. Because the waiver was affirmative and defendant's counsel knew of the misconduct when he elected to proceed with the trial, we do not reach the question of fundamental error raised by appellant. See Sanford v. Rubin, 237 So.2d 134 (Fla. 1970).
Reversed and remanded for a new trial.
NOTES
[*] Jackson was found guilty of both charges by the jury.