NESBITT, Judge.
The issue in this case is whether the lower court erred in refusing to allow defense counsel to introduce extrinsic evidence of the victim’s alleged prior inconsistent statements. Because we find that no error occurred we affirm the defendant’s judgment of conviction and sentence.
Pursuant to an adverse jury verdict, Ryan Roscha Mills was adjudicated guilty of sexual battery in violation of section 794.011(5), Florida Statutes (1993). At trial, the victim’s testimony was an important part of the state’s case. After the state rested, Mills’ counsel called a Detective Oterino as a witness. Detective Oterino interviewed the victim, LM, and took a statement from her a few hours after the crime occurred.
Defense counsel attempted to elicit from Detective Oterino certain statements made by LM that were allegedly inconsistent with her testimony on cross examination. The trial court, sustaining the state’s objection, ruled that defense counsel had not laid a proper foundation for the introduction of such statements and precluded the testimony. It is that ruling which Mills now claims was error.
Subsection 90.608(1), Florida Statutes (1993), provides that a party may attack a witness’s credibility by introducing statements of the witness that are inconsistent with her present testimony. The procedure a party must follow to introduce extrinsic evidence[1] of such prior inconsistent statements is found at section 90.614, Florida Statutes (1993). Notwithstanding these provisions,
[i]t is well established that if a witness is cross-examined concerning a collateral or irrelevant matter, the cross-examiner must “take” the answer, is bound by it, and may not subsequently impeach the witness by introducing extrinsic evidence to contradict the witness on that point. E.g. Patterson v. State, 157 Fla. 304, 313, 25 So.2d 713, 717, cert. denied, 329 U.S. 789, 67 S.Ct. 352, 91 L.Ed. 676 (1946); Stewart v. State, 42 Fla. 591, 594, 28 So. 815, 816 (1900); Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981); see generally Charles W. Ehrhardt, Florida Evidence Sec. 608.1 (1993 ed.).
Caruso v. State, 645 So.2d 389, 394 (Fla.1994).[2]
Recently, the Second District laid out the standard to be applied in this area:
“The test is whether the proposed testimony can be admitted into evidence for any purpose independent of the contradictions.” Dupont, 556 So.2d at 458. Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness’ bias, corruption, or lack of competency. Gelabert v. State, 407 So.2d 1007,1009-1010 (Fla. 5th DCA 1981).
The test of relevancy and materiality is whether the cross-examining party could have, for any purpose other than impeachment, introduced evidence on the subject in its case in chief. Johnson v. State, 178 So.2d 724 (Fla. 2d DCA 1965). If the *880 evidence is relevant to independently prove a material fact or issue, or if it goes to discredit a witness by pointing out bias, corruption, or lack of competency, it will be allowed. Gelabert, 407 So.2d at 1010.
Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995).
Following is a list of the areas of alleged inconsistency about which defense counsel wanted to question Detective Oterino.
(1) Whether LM told the Detective she lived in Broward County, given her trial testimony that she lived in Dade.
(2) Whether Mills asked LM for her telephone number the day before the incident.
(3) Whether LM, the day before the alleged sexual battery, gave Mills permission to call her the following morning.
(4) Whether, the morning before the incident, LM told Mills she wanted to see him at 9 p.m. that night.
(5) Whether LM told the Detective that Mills pointed out the house where the incident later occurred.
(6) Whether LM, at Mills’ invitation, voluntarily entered the house where the alleged rape occurred.
First, it is clear that none of the foregoing areas of inquiry would discredit LM by pointing out her bias, corruption, or lack of competency. Thus, the question is whether the proposed testimony was “relevant to independently prove a material fact or issue.” Lawson, 651 So.2d at 715. The material fact Mills’ counsel was seeking to establish in this ease was LM’s consent.
The proposed testimony was relevant if it tended to prove LM’s consent. See § 90.401, Fla. Stat. (1993) (defining relevant evidence). We do not believe that any of the above-identified testimony sought to be elicited from Detective Oterino, assuming it were true, tended to independently prove that LM consented to sexual intercourse with Mills on the day and time in question. For example, whether LM told Detective Oterino that she, at Mills’ invitation, voluntarily entered the house where she was allegedly raped does not tend to prove that she consented to sexual intercourse with him. Cf. Taylor v. State, 583 So.2d 323, 328 (Fla.1991) (upholding trial court’s exclusion of testimony not tending to show victim consented to sex with defendant on night in question).
In Florida, an exception to the so called collateral-matter rule exists where the collateral extrinsic evidence sought to be introduced concerns matters testified to by the witness on direct examination.[3] Segarra v. Mellerson, 675 So.2d 980, 983 (Fla. 3d DCA 1996). The witness is often said to have “opened the door.” Charles W. Ehrhardt, Florida Evidence § 608.1, 375-76 (1996 Ed.). “Under this concept, the adverse party may be able to introduce extrinsic evidence to contradict a specific factual assertion made during the testimony of the witness, even if it pertains to a collateral matter.” Id. (emphasis added), and cases cited therein.
Of the previously mentioned areas where defense- counsel sought to introduce extrinsic evidence, LM made only one specific factual assertion that was arguably inconsistent with the detective’s proposed testimony. LM testified on direct examination that Mills pushed and pulled her into the house where the incident ultimately occurred. Defense counsel contended that LM told the detective she voluntarily entered the house at Mills’ invitation.
Despite the fact that LM may have “opened the door” to this area, defense counsel was still required to lay the proper foundation for the introduction of the detective’s testimony. § 90.614(2), Fla. Stat. (1993). Having reviewed defense counsel’s cross examination of LM on this point, it is clear she was never asked “whether she had made a specific oral statement to the police which was allegedly inconsistent with her trial testimony.” Fernandez-Carballo v. State, 590 So.2d 1004, 1004-05 (Fla. 3d DCA 1991). Given defense counsel’s failure to lay a prop *881 er foundation, the trial court properly barred Detective Oterino’s testimony on this point.
In sum, the trial court’s ultimate ruling precluding Mills’ counsel from questioning Detective Oterino did not result in error. We affirm the trial court as having reached the right result, albeit in part on a different basis. See Cordova v. State, 675 So.2d 632, 636 (Fla. 3d DCA1996).
Affirmed.

. We use the term "extrinsic evidence,” in the context of this case, to mean evidence that necessitates that another witness be called for its introduction. See generally Carter v. Hewitt, 617 F.2d 961 (3d Cir.1980) (holding that properly excluded “extrinsic evidence” is that which "is obtained from a witness other than the one whose credibility is under attack”).

. “The policy reasons for excluding extrinsic evidence are the avoidance of undue prolongation of the trial, confusion of the issues, and unfair surprise to the witness.” Frederick C. Moss, The Sweeping Claims Exception and the Federal Rules of Evidence, 1982 Duke L.J. 61, 70 (1982); see Gelabert v. State, 407 So.2d 1007, 1009 (Fla. 5th DCA 1981).

. For an excellent analysis and review of the various reasons offered for this exception, see generally Moss, supra, at 71-78.