HARRIS, J.
Simmons was convicted of two counts of committing a lewd act by having sexual intercourse with a child under sixteen and, because each child witnessed the sexual act being committed on the other, two counts of committing a lewd act in the presence of a child. He appeals contending that the commission of a sexual act on one child (section 800.04(3), Florida Statutes) cannot constitute the separate crime of committing a lewd and lascivious act in the presence of another child (section 800.04(4), Florida Statutes). We disagree.
We find State v. Hernandez, 596 So.2d 671 (Fla.1992), and Petersen v. State, 650 So.2d 223 (Fla. 5th DCA 1995), both inapplicable to this case. In Hernandez, the defendant committed a single act of masturbation in the presence of two children. In Petersen, the defendant exposed himself in the presence of three children. In each case, the defendant was charged with committing a single act which viplated a single section of the statute. It was held in each case that the fact that there were multiple witnesses to the offense did not create multiple offenses. In our case, however, defendant was charged with committing two separate sex acts on a child prohibited by subsection (3) of section 800.04, each of which gave rise to a separate offense of lewd acts committed in the presence of a child under subsection (4) of the same statute. Hence, the same sexual act committed on victim one also constitutes a lewd act committed in the 'presence of victim two. This conclusion is consistent with the legislative direction contained in section 775.021(4), Florida Statutes, that separate convictions be entered for even a single act if the act violates separate criminal provisions,
Simmons also urges that his impeachment on a collateral issue was improper and that he is entitled to a new trial. Again, we disagree. The fourteen year old victims in this case testified that Simmons had provided them with cocaine on several occasions lead *863 ing up to the sexual encounter at issue. Ms direct examination, Simmons testified that not only did he not give the girls cocaine, he never dealt in cocaine nor did he associate with anyone who had. On cross-examination, Simmons was asked whether he knew Jeffery Rogers. Simmons admitted that Rogers had been arrested in Simmons’ apartment where 169 grams of cocaine were recovered and that Simmons had entered a plea in the case. Simmons now urges that under Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981), such questions were improper. In Gelabert, this court quoted from Stewart v. State, 42 Fla. 591, 28 So. 815, 816 (1900): On
But the answer of a witness on cross-examination respecting any fact irrelevant to the issue will be conclusive, and no such question can be put on cross-examination merely for the purpose of impeacMng Ms credit by contradicting Mm.
But tMs simply indicates that the State may not ask a question relating to an irrelevant matter merely so that it can impeach the witness on the answer thus obtained. We explained our reasomng as follows:
The reasomng behmd the rule has been attributed to the evidentiary philosophy that a party cannot impeach Ms own witness and when the question is outside the scope of direct examination and on a collateral matter, the cross-examiner adopts the witness as his own.
Gelabert, 407 So.2d at 1009. See also Eldridge v. State, 27 Fla. 162, 9 So. 448 (1891).
Here, the State did not ask the question which prompted the impeaching follow up. It was pursmng an issue created by the defendant on his direct questioning. Section 90.608, Florida Statutes, has been amended since Gelabert to provide:
Any party, including the party calling the witness, may attack the credibility of a witness by:
(1) Introducing statements of the witness wMch are inconsistent with the witness’s present testimony.
Further, even if the impeachment was improper, we find it to have been harmless.
AFFIRMED.
GRIFFIN, C.J., and COBB, J., concur.