424 So.2d 950 (1983)
Marvin Eugene BROWN, Appellant,
v.
STATE of Florida, Appellee.
John Lee WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
Nos. AK-331, AK-363.
District Court of Appeal of Florida, First District.
January 10, 1983.
*951 Frank Tassone, Jacksonville, for appellant Marvin Eugene Brown.
Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant John Lee Williams.
Jim Smith, Atty. Gen., John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Williams and Brown appeal their convictions and sentences for the crime of burglary of a dwelling with intent to commit theft. We reverse and remand for a new trial.
Williams and Brown were charged with the above crime by separate informations. *952 On the same day that the jury selection process was commenced, the State moved to consolidate the cases against Brown and Williams. The trial court granted the motion to consolidate over the objections of both appellants. Opening arguments were commenced two days later, at which time both appellants moved to dismiss the information on the ground that the information was fatally defective in failing to allege that appellants entered a premises without the consent of the lawful owner. This motion was denied. Thereafter, the State filed a motion in limine to prohibit appellants from cross-examining the victim concerning his general moral character or drug usage. In opposition to this motion, appellants argued that cross-examination of the victim on these matters was necessary to explain the presence of appellants' fingerprints at the victim's home and was, therefore, essential to establish appellants' defense. On that basis, appellants argued that their sixth amendment right to confront and cross-examine witnesses would be violated if the trial court granted the State's motion in limine. In granting the State's motion in limine, the trial court noted that "if you want to call him [the victim] as an adverse witness during your side of the case, you can." During the State's case-in-chief, the State presented testimony from the victim and his sister, with whom he lived. Both witnesses testified that neither appellant had ever been inside their residence with permission. The State also presented expert fingerprint testimony linking both appellants to the crime. Fingerprints from both appellants were found on the outside portion of a sliding glass door, which was identified as the point of entry. Appellant Williams' fingerprints were also found on a dresser drawer located inside the burglarized dwelling. In addition, the State introduced evidence from an eyewitness who testified that on the morning of the burglary he saw Appellant Williams at the victim's home trying to open the garage door. The eyewitness also testified that on the morning of the burglary, he observed Appellant Brown driving an automobile which passed several times slowly by the victim's home and which later was parked around the corner from the victim's home. During appellant's case-in-chief, both appellants attempted to explain the presence of their fingerprints at the scene of the crime. Williams testified that he had been in the victim's home to buy marijuana from the victim and to have sex with him. Brown testified that he had been in the victim's home to sell food stamps to the victim and to buy marijuana from him. Appellant Williams also presented testimony from Melvin Brown, who is the brother of appellant Marvin Brown. Witness Brown testified that the victim had given him cocaine and marijuana, and that the victim had approached him sexually. This testimony, however, was stricken from the record by the trial court. During Appellant Brown's cross-examination of Melvin Brown, testimony similar to that which was stricken was proffered, but the trial court prohibited it from being admitted into evidence. On rebuttal, the State recalled the victim, who denied ever selling marijuana to any of the defense witnesses. On surrebuttal, the trial court refused to allow counsel for Appellant Williams to inquire as to whether the victim had ever had a sexual encounter with his client and also refused to allow Appellant Williams to recall any of his witnesses to testify that they had purchased drugs from the victim. At the conclusion of the trial, appellants were found guilty as charged. On appeal, appellants raise four issues.
Addressing first the question of whether the trial court erred in denying appellants' motions for judgments of acquittal, we find that the trial court did not err. On review of a trial court's denial of a motion for judgment of acquittal, the test for determining the sufficiency of proof is whether the jury might reasonably conclude that the evidence, viewed in the light most favorable to the government, is inconsistent with every reasonable hypothesis of the defendant's innocence, or, stated in another way, whether a reasonably minded jury must necessarily entertain a reasonable doubt of the accused's guilt. United States v. Diaz, 655 F.2d 580 (5th Cir.1981).
*953 Drawing every inference in favor of the State, the record is sufficient to support the convictions of both appellants. The evidence against Appellant Williams consisted of eyewitness testimony placing Williams at the scene of the crime on the morning of the break-in. In addition, Williams' fingerprints were found both outside (on the sliding glass door where entry was gained) and inside (on a dresser drawer) of the burglarized dwelling. As to Appellant Brown, the evidence consisted of testimony from an eyewitness who identified Brown as the driver of a vehicle which passed slowly by the victim's home and which was parked around the corner from the burglarized dwelling on the morning of the crime. Brown's fingerprints were also found on the outside of the sliding glass door where entry was gained into the burglarized dwelling.
Both appellants contend that the only evidence implicating them in the crime consists of fingerprint evidence. Based on this interpretation of the evidence, they argue that in order for this evidence to be sufficient to identify appellants as the perpetrators of the burglary, the State must show that the fingerprints could have only been made at the time the crime was committed. Appellants contend that the State failed to carry this burden. We disagree.
Preliminarily, we hold that, as to Appellant Williams, the fingerprint evidence is not the only evidence linking him with the crime. The eyewitness testimony from Mr. Thomas placing Williams at the scene of the crime constitutes competent evidence which implicates Williams in the crime in question. On this basis, we find that the evidence against Appellant Williams is sufficient to sustain his conviction even without establishing that his fingerprints could have been made only at the time of the crime.
Furthermore, even assuming that the fingerprint evidence was the sole evidence linking appellants to the crime, the evidence would be sufficient to support appellants' convictions. Although both appellants testified that they had been inside the burglarized dwelling before the date of the crime, viewing the evidence in the light most favorable to the State, there can be no question that the State carried its burden by showing, prima facie, that appellants' fingerprints could have only been made at the time the crime was committed. Both residents of the burglarized dwelling testified that neither appellant had ever been invited inside their home. In view of the fact that the fingerprint evidence was taken only hours after the crime was committed, as well as the fact that appellants' fingerprints were found in locations that had very limited accessibility, we find that the evidence was sufficient to prove that appellants' fingerprints could have only been made at the time of the crime. On this basis, we find that the evidence is sufficient to sustain appellants' convictions.
We next consider appellants' contention that their convictions should be reversed on the ground that the informations which charged them were fatally defective because they failed to allege that either appellant entered a dwelling without consent. This argument is without merit. In State v. Hicks, 421 So.2d 510 (Fla. 1982), the Florida Supreme Court reversed the decision of the 5th District Court of Appeal in Hicks v. State, 407 So.2d 252 (Fla. 5th DCA 1981), and held that nonconsent is not an essential element of the crime of burglary which must be alleged and proved.
We now turn to appellants' last two points on appeal, which we find set forth grounds for reversal. The first of these grounds concerns the trial court's decision to consolidate the cases of Williams and Brown two days before trial. Appellants contend that they were denied their sixth amendment right to effective representation because they were not given a reasonable time in which to prepare a defense for the consolidated trial. The State contends that the motion for consolidation was timely and that, even if untimely, appellants were not prejudiced because they had two days in which to prepare for the joint trial.
There can be no question in this case that the motion to consolidate was untimely and that appellants were prejudiced by the *954 untimely motion. The constitutional right to be represented by counsel necessarily carries with it the right to have a reasonable time in which to prepare for trial. In this case, appellants were clearly denied their due process right to have a reasonable opportunity to prepare for trial. See Harley v. State, 407 So.2d 382 (Fla. 1st DCA 1981). Rule 3.151(b), Fla.R.Crim.P. (1981), provides as follows:
Two or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion by a defendant or by the State. The procedure thereafter shall be the same as if the prosecution were under a single indictment or information. Failure to timely move for a consolidation constitutes a waiver of the right to consolidation. (emphasis supplied).
The committee note to Rule 3.151(b) further states:
Limits motion for consolidation to defendant and provides that defendant waives his right to consolidation by failing to file a timely motion. Under standards relating to joinder of offenses and defendants, the prosecution may avoid the necessity for consolidation by charging offenses and defendants in a single indictment or information where consolidation is permissible... . (emphasis supplied)
Based on a reading of the above rule and committee note, it is apparent that the State could have avoided the necessity of consolidation in this case by charging both appellants in a single information. Having failed to exercise that right, the State could have only consolidated appellants' cases by filing a timely motion for consolidation. The question, then, is whether the State's motion for consolidation was timely filed and, if not, whether this failure to timely move for consolidation constitutes grounds for reversal. If the requirement in Rule 3.151(b), Fla.R.Crim.P., that a motion for consolidation must be timely made means anything, it must require that such a motion be made more than two days before trial.
Having determined that the motion to consolidate in this case was untimely made, the only question that remains is whether appellants were prejudiced. We believe they were. In Belote v. State, 344 So.2d 565 (Fla. 1977), the Supreme Court of Florida held that a defendant was denied substantial procedural rights by the action of the trial court in consolidating, on its own motion, three cases against him on the day before trial where the state had failed to exercise its right to charge all the related offenses in a single information. In Zeigler v. State, 402 So.2d 365 (Fla. 1982), the Florida Supreme Court was confronted with another consolidation case in which the trial court on its own motion moved for consolidation. In Zeigler, unlike Belote, there was a period of several months in between consolidation and trial. Noting this distinction between the two cases, the Supreme Court in Zeigler, held that "[u]nlike the situation in Belote, supra, and Kilgore, supra, no short notice or surprise is present in the record." Based on this distinction, the court in Zeigler found that although the court was in technical violation of the rule when it consolidated the indictments, the error was not reversible because Zeigler had failed to demonstrate any prejudice resulting from the error. In view of this distinction which the Florida Supreme Court has drawn between the Zeigler and Belote cases, it would appear that the test for determining whether a defendant has been prejudiced by an untimely motion to consolidate is whether the defendant has been given a reasonable period after consolidation to prepare for the consolidated trial. When the period between consolidation and trial is so short that the defendant is denied a reasonable opportunity to prepare a defense for a joint trial, such a defendant has clearly been prejudiced by the denial of substantial procedural rights. In this case, it seems patent that the two-day period between consolidation and trial prejudiced appellants by denying them their due process rights to have a reasonable opportunity to prepare for trial. See Harley, supra. On that basis, we reverse appellants' convictions and sentences and remand the case for new trial.
*955 We also reverse their convictions and sentences on the ground that the trial court impermissibly restricted appellants' cross-examination of the victim as well as the examination of witness Melvin Brown. The presence of appellants' fingerprints at the scene of the crime was clearly a relevant and material issue in this case. The theory of the defense was that these fingerprints were placed at the scene of the crime when appellants visited the victim at his residence for illicit purposes; namely, the purchase of marijuana, the sale of food stamps, or homosexual relations. The victim denied that appellants had ever been inside the burglarized dwelling prior to the crime. Normally, testimony which concerns the moral character and prior bad acts of a witness is not admissible to impeach a witness. However, in this case, such testimony is admissible to show a possible bias or motive on the part of the victim in testifying that appellants had never been inside his residence. Although the questions of whether the victim had ever sold marijuana or paid cash for food stamps or engaged in homosexual activity are not directly relevant or material to the question of whether appellants had ever been inside the victim's residence, testimony concerning these issues could possibly show a motive for the victim in denying that appellants had ever been inside his house. This is especially true in light of the fact that both appellants testified that they were inside the victim's home prior to the crime for illegal purposes.
In Bryant v. State, 341 So.2d 841 (1st DCA 1977), this court held that "[i]t is a fundamental principle that matters tending to show bias or prejudice in a criminal prosecution may be inquired about even when they were not mentioned in direct examination." The right to elicit facts tending to show bias or prejudice of a witness becomes even more important to a defendant in a criminal case, such as this one, where the jury must know of any improper motives of a prosecuting witness in determining that witness' credibility. See Roberts v. State, 164 So.2d 817 (Fla. 1964). In this case, it was necessary for the jury to know whether the victim had any improper motives in testifying that appellants had never been inside his home. For that reason, it was prejudicial error for the trial court to prohibit appellants from cross-examining the victim concerning the above matters.
In reaching this conclusion, we reject that State's contentions that appellants were not prejudiced by the limitations placed on their cross-examination of the victim because the trial court stated that it would allow appellants to call the victim as an adverse witness and to impeach his credibility at that time. The right to confront and cross-examine a witness is not satisfied by permitting defense counsel to call a State's witness as an adverse witness. By restricting appellants' cross-examination and permitting only a direct attack on the victim's credibility as an adverse witness, the court committed reversible error by forcing appellants to choose between calling an additional defense witness and retaining their right of concluding closing argument. McDuffie v. State, 341 So.2d 840 (Fla. 2d DCA 1977).
For the above reasons, it was also error for the trial court to prohibit appellants from eliciting testimony from witness Melvin Brown concerning questions about whether he had ever obtained illegal drugs from the victim or whether the victim had ever approached him sexually. On proffer by appellants, Melvin Brown stated that he had obtained marijuana and cocaine from the victim and that the victim had sex with him. This testimony was material and relevant to the victim's credibility in that it tended to establish a possible motive for the victim's testimony that appellants had never been to his house prior to the crime.
REVERSED and REMANDED for new trial.
ERVIN and LARRY G. SMITH, JJ., concur.