SORONDO J.
Lowell Bernard Richardson (defendant) appeals a final judgment of conviction and sentence.
The state charged defendant with burglary with assault or battery therein while armed, aggravated assault with a firearm, battery, and violation of an injunction against repeat violence. The state nolle prosed the aggravated assault with a firearm charge, and the judge considered the injunction violation charge sitting without a jury. Defendant entered a plea of not guilty and proceeded to a jury trial on the remaining counts.
At trial, the testimony revealed that defendant was Christine Shine’s boyfriend and the father of her child. Shine testified *1056 that on August 27,1999, she and defendant were having a conversation on the porch behind the house that she shared with her mother, Mary Moore, and her “godsis-ter,”[1] Alexis Green. The two began to argue and defendant hit her with a bag, which was filled with his clothing. Although defendant was there to get his clothes, Shine denied that he lived with her. When asked how she came to have defendant’s clothing she responded, “he told me to hold his clothing because he was going to take a bath at his friends house.”
Shine testified that after defendant hit her with the bag of clothes, she ran into the house through the back door. In order to prevent him from entering, she threatened defendant with a kitchen knife; however, she said she did not stab him.
According to Shine, defendant left and returned approximately twenty minutes later and tried to get into the house through the front door. She testified that as defendant tried to enter, he put a gun through the mail slot. He ultimately gained entry by forcing the door. Once inside, he pushed Shine to the wall, put a gun to her head and threatened to kill her.
Shine testified that after defendant threatened her with the gun, he left through the back door, and she heard a gunshot. She subsequently saw him go into a friend’s house, after which she called her mother and then the police.
Defendant was found guilty of burglary with assault or battery therein, without a firearm, and of battery. The court sentenced him to seven and a half years imprisonment, followed by two and a half years of probation. He was acquitted on the separate injunction violation charge.
Defendant’s main argument on appeal is that the trial court erred in excluding letters written by Shine to defendant after the events which led to his arrest and prior to trial, while defendant was incarcerated in the County Jail. Specifically, the defense wanted the jury to read one particular passage:
Lowell I will make a serious ass promise to you and only you, if you ever in your fucking life cheat on me again or even fix your mouth to say you don’t want to be with me, I will kill you this time and I will go to jail for the rest of my life and that’s a promise.
(Emphasis added). Defense counsel offered the letters into evidence to establish the volatile nature of defendant’s relationship with Shine, as well as to establish her general bias against him.[2] We agree that the exclusion of the letter containing the above quoted language was error.
In Hair v. State, 428 So.2d 760, 761-62 (Fla. 3d DCA 1983), this Court stated that
a party may elicit facts tending to show bias, motive, prejudice or interest of a *1057 witness, a right that is particularly important in criminal cases because “the jury must know of any improper motives of a prosecuting witness in determining that witness’ credibility.” Brown v. State, 424 So.2d 950, 955 (Fla. 1st DCA 1983).
See Jones v. State, 678 So.2d 890 (Fla. 4th DCA 1996); Stanley v. State, 648 So.2d 1268 (Fla. 4th DCA 1995); Arias v. State, 593 So.2d 260 (Fla. 3d DCA 1992); Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980); See also Charles W. Ehrhardt, Florida Evidence § 608.5, at 457 (2000 ed.)(“Interest, motive and animus are never collateral matters on cross-examination and are always proper”).
Shine’s credibility was critical to the state’s case. Her testimony concerning defendant’s use of a gun, even though corroborated by her “godsister,” was obviously not believed by the jury, which acquitted him on the firearm aspect of the burglary charge. Shine’s threat in her letter to defendant that if “you ever ... cheat on me again ... I will kill you this time,” suggests, first, that the couple had already experienced one incident of infidelity. Given the timing of the letter, the jury could have reasonably inferred that it was this accusation of infidelity that led to the confrontation in this case. Second, it implies that she stabbed defendant with a knife during the incident, as the defense argued at trial. These interpretations could have led the jury to the conclusion that Shine was the actual aggressor during the argument, or that she was being untruthful about the details of the incident. Defendant had the right to have the jury hear this impeaching evidence.
After reviewing the entire transcript of the trial, we cannot conclude beyond a reasonable doubt that the error discussed above did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Reversed and remanded for a new trial.

. When asked to explain this term, the alleged victim, Ms. Shine, responded: "When her mother raised me and my momma raised her.”

. When defense counsel sought to have the letters marked for identification, the state objected and the court called for a side bar conference. At one point during the early part of the conference, defense counsel tells the court he was not seeking to introduce the letters into evidence. Later in the discussion, however, he tells the court that the letters are relevant to establish the nature of the relationship between Shine and defendant and argues that the jury should be allowed to see them. Counsel then informs the court of the death threat.
Defense counsel's argument clearly suggests that he either wanted to introduce the letters into evidence, or, at the very least, to impeach the witness by reading from the letter. The trial court ultimately ruled, "I will not permit you to get into these letters at this point. I don’t see any relevance. There is nothing in these letters, anything that she may have written about that really talks about you know, fabrication of the events of that day.”